## MERCANTILE TRUST COMPANY v. HENSEY.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 245. Submitted March 15, 1907.—Decided April 8, 1907.

It is for the plaintiff in error to show affirmatively that error was committed, it is not to be presumed and will not be inferred from a doubtful statement in the record.

Where there is no evidence of the amount of damage caused by each particular breach but only of the total amount sustained, the attention of the trial court should have been called to the plaintiff's objection to a recovery of particular damage permitted, and a request made for direction of verdict, and in the absence thereof the objection cannot be argued here.

Although under a building contract the builder, to be entitled to payment, must first obtain the certificate of the architect, in the absence of a provision in plain language to that effect, the certificate is not conclusive as to the amount due nor a bar to the owner showing a violation of the contract, in material parts, by which he has sustained damage.

27 App. D. C. 210, affirmed.

THE Mercantile Trust Company, by this writ of error, seeks to review a judgment of the Court of Appeals of the District of Columbia, affirming a judgment against it of the Supreme Court of the District for the sum of $8,468. The action was brought upon a bond for fifty thousand dollars, executed January 24, 1900, by the company as surety for one Jones, for the performance by him of a written contract entered into on the same date between him and the defendant in error, who was the plaintiff below, relative to the completion by Jones for the defendant in error of certain houses already in process of construction in the city of Washington. The condition of the bond was, in substance, that if the principal, Jones, should duly and faithfully perform and fulfill all the conditions of the contract entered into between him and the defendant in error the bond was to be void, otherwise to remain in force.

The contract provided that Jones, for the consideration mentioned therein, would within seven months from the date thereof well and sufficiently erect and replace all defective

work and finish the twenty-one brick dwelling houses mentioned "agreeably to the drawings and specifications made by Melville D. Hensey, architect, and which plans and specifications are signed by the said parties hereto and hereunto annexed within the time aforesaid in a good, workmanlike and substantial manner, to the satisfaction and under the direction of Bates Warren, or the architect placed in charge by him, to be testified by writing or certificate under the hand of Bates Warren, or the architect placed in charge by him, and also shall and will find and provide such good, proper and sufficient material of all kinds whatsoever as shall be proper and sufficient for the completing and finishing all of said twenty-one houses and other works of the said buildings mentioned in the said specifications for the sum of eighty-nine thousand two hundred and fifty dollars, to be paid as set out in the schedule of payments hereto annexed and signed by the parties hereto and made a part hereof." Hensey, "in consideration of the covenants and agreements being strictly performed and kept by the said party of the second part as specified," agreed to pay the contractor the above-named sum "as the work progresses in the manner and at the time set out in the schedule of payments hereto annexed and signed by the parties hereto and made a part of this agreement; provided that in each of the said cases a certificate shall be obtained from and signed by the architect in charge that the contractor is entitled to payment, said certificate, however, in no way lessening the total and final responsibility of the contractor; neither shall it exempt the contractor from liability to replace work if it be afterwards discovered to have been ill done or not according to the drawings and specifications either in execution or materials; and, further, that the party of the second part shall furnish, if required, satisfactory evidence that no lien does or can exist upon the work." The last payment provided for in the contract was to be made, "when the houses are fully completed in accordance with the said agreement and the plans and specifications prepared therefor."

All the materials were to be new and of the best quality,
and the contractor was to "execute and complete all the work
as set forth in the specifications and drawings in the best and
most workmanlike manner." It was agreed that " in all cases
of doubt as to the meaning of the drawings reference is to be
made to the architect in charge, whose decision will be final."

Although this contract was entered into in January, 1900,
and under it the houses were to be completed in seven months,
yet, for some reason, Bates Warren, the person named in the
contract, did not appoint an architect until April, 1901, when
he appointed Mr. W. J. Palmer. The evidence given on the
part of the plaintiff tended to prove that the contractor,
Jones, abandoned the work on the houses early in the fall of
1900, leaving them uncompleted, and the work was otherwise
carried on during the following winter, but that there was no
architect in charge until Mr. Palmer's appointment. From
that time Mr. Palmer seems to have in some degree superin-
tended the work, and on the twenty-ninth of July, 1901,
reported in writing to Mr. Warren the completion of the
houses in question. In his letter Mr. Palmer said: "The
work has been done according to my interpretation of the plans
and specifications, and where deviations have been made from
the plans and specifications it has been where the same were
inconsistent and ambiguous, and in all cases of inconsistency
and ambiguity the work has been done according to the inter-
pretation most beneficial to the houses."

This action was subsequently commenced for the purpose
of recovering the damages which the plaintiff Hensey alleged
he had sustained by reason of the failure of Jones to fulfill and
carry out the contract. Issue being duly joined between the
parties, the plaintiff gave evidence tending to prove that the
houses were not completed within the contract time, nor
according to the plans and specifications in the particulars
stated, and that the value of the houses was between two
and three thousand dollars less on each house than it would
have been had they been completed according to the contract,

plans and specifications. The defendant duly objected to such evidence and took exceptions to its admission.

A verdict was rendered in favor of the plaintiff in the sum of $8,468, after allowing the defendant's claim of set-off of $29,032.

*Mr. Hayden Johnson* and *Mr. John Ridout,* for plaintiff in error, submitted:

The testimony of all the plaintiff's witnesses who testified in respect of deficiencies in construction being as to the total damage sustained by the plaintiff, as the result of structural defects, defective materials and omissions, and the trial court having ruled that the jury should consider omissions alone, there was no basis upon which the jury could segregate damages caused by defective materials and damages caused by omissions so as to reach a verdict in accordance with the court's rulings.

All the witnesses who were produced by the plaintiff testified, in proof of the damage sustained by the plaintiff, that the difference in the value of the houses by reason of the omissions, structural defects and defective materials was from $2,000 to $3,000 less on each house than it would have been had they been completed according to the witness's interpretation of the contract, plans and specifications. No witness was interrogated in respect of the difference in the value of the houses by reason of omissions alone. No witness undertook to segregate the items assigned as breaches, and give the damage arising from each alleged defect.

Under the rulings of the court, therefore, the case was submitted to the jury for them to assess damages only for omissions, if any they should find, and they were expressly instructed not to assess damages for substitutions of material or modification of construction made with the approval of the architect under his interpretation of the plans and specifications. This necessarily requires, in view of the testimony of the architect, that what "substitutions of material and modifica-

tions of construction were made with his approval and according to his interpretation of the plans and specifications, that the jury segregate the damage arising from omissions from the damages resulting from substitutions of material and modifications of construction. Unless from the testimony they can do this, the charge given them in the twelfth prayer, and its explanation by the court, becomes idle and useless. And yet all the testimony in the case, as far as the money estimate for damage is concerned, lumps omission, structural defects and defective materials, and furnishes no basis whatever upon which they can be segregated. Even though all of the substitution of materials and modifications of construction were not made with the consent of the architect, it is conceded that some of them were, so this segregation is none the less essential in giving the jury a basis upon which to assess damages.

Under the building agreement, the architect's certificate of completion should have been held to· be final and conclusive of such completion, there being no evidence· of fraud or bad faith on his part.

Taking into consideration that there is not one word in the record from which fraud or bad faith on· the part of either Warren or Palmer could be inferred, it is believed that they, having been made the arbitrators by Hensey as to the proper construction of the work, and the Trust Company having acted under their directions, their decision is final and binding upon Hensey.

The law upon· the subject is entirely settled. *Boettler* v. *Tendick*, 73 Texas, 494; *Crane Elevator Co.* v. *Clark*, 80 Fed. Rep. 705; *Railway Co.* v. *Gordon*, 151 U. S. 285; *Railroad Co.* v. *Price*, 138 U. S. 188; *Sweeney* v. *United States*, 109 U. S. 618.

*Mr. Arthur A. Birney* ˌand *Mr. Henry F. Woodard,* for defendant in error, submitted:

While it is competent for parties to agree that the certificate of an engineer, architect or other person shall be final and

conclusive, and that in such case, and "in the absence of fraud, or such gross mistake as to necessarily imply bad faith, or failure to exercise an honest judgment, the action of the architect would be final," this attribute of finality attaches only where the parties have so agreed, either in terms or by necessary implication, is clear from the decisions.

Cases of such express agreement for conclusiveness which are cited by the other side, are *Boettler* v. *Tendick,* 5 L. R. A. 270; *Sweeney* v. *United States,* 109 U. S. 618; *Railroad Co.* v. *March,* 114 U. S. 549; *Railroad Co.* v. *Price,* 138 U. S. 185; *Sheffield R. R. Co.* v. *Gordon,* 151 U. S. 287; while *Kihlberg* v. *United States,* 97 U. S. 400, is a case of necessary implication, treated by the court as an express agreement.

These cases and others are reviewed in *Central Trust Co.* v. *Louisville &c. Ry. Co.,* 70 Fed. Rep. 282, where, after pointing out that the provision for finality is found in the contracts in those cases where the certificate was held conclusive, the court says that the court should not imply such an agreement but should require clear and express language, because it is contracting away the right of the party to appeal to the courts of justice in case of a controversy.

But however it may be in other cases where the architect, agent of the owner, accepts and certifies work as done according to the contract, in this case the certificate cannot bind, because the right of the owner, notwithstanding a certificate, to claim for bad work and inferior materials is expressly reserved to him; and the certificate is so clearly wrong as to prove either fraud or such mistake by the architect as necessarily to imply bad faith, and for this reason is not binding. *Kihlberg* v. *United States,* 97 U. S. 402.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

After even more than the usual number of pleas, additional pleas, replications, rejoinders and demurrers, which are to be

found in the pleadings in this District, the parties came to trial on the issues of fact, and the plaintiff recovered a verdict as stated. The judgment entered on the verdict was affirmed by the Court of Appeals. 27 App. D. C. 210.

The grounds submitted in this court for the reversal of the judgment are reduced to two, set forth in the brief for the plaintiff in error, as follows:

"First, that the testimony of all the plaintiff's witnesses who testified in respect of deficiencies in construction being as to the total damage sustained by the plaintiff as the result of structural defects, defective materials and omissions, and the trial court having ruled that the jury should consider omissions alone, there was no basis upon which the jury could segregate damages caused by defective materials and damages caused by omissions so as to reach a verdict in accordance with the court's ruling.

"Second, that under the building agreement, the architect's certificate of completion should have been held to be final and conclusive of such completion, there being no evidence of fraud or bad faith on his part."

In regard to this first ground of reversal, the record is at first sight somewhat confused. The plaintiff in error asserts that there was no evidence given segregating the items upon which the sum total of the damage was arrived at; that the evidence given on the part of the plaintiff was that the houses were each worth between two and three thousand dollars less on account of the failure of plaintiff in error to fulfill the conditions of the contract, but that it is impossible to discover from that evidence what amount of the damage was due to omissions, what amount to structural defects and what amount to defective material; and, as the court instructed the jury that in considering the question of structural defects they were not at liberty to consider anything but omissions, and were not entitled to consider substitutions of material or modifications of construction made with the approval of the architect under his interpretation of the plans and specifications, there

was in reality no evidence before the jury upon which they could have estimated the damages under the instruction given them by the court; that all the witnesses testified simply as to the total diminution in value, as a result of the three items mentioned—omissions, structural defects and defective material—while the court charged, agreeably to the twelfth request of the plaintiff in error, that they were at liberty only to consider damages resulting from omissions.

The twelfth prayer of the plaintiff in error, which its counsel asserts was granted by the court, is as follows:

"The jury are instructed that, in considering the question of structural defects, they are not at liberty to consider anything but omissions, if any they find, and are not entitled to consider substitutions of materials or modifications of construction made with the approval of the architect, under his interpretation of the plans and specifications."

There are several answers to the first ground urged by the plaintiff in error for a reversal of this judgment.

(1) It does not appear that there is any basis in the record for the assertion of the plaintiff in error, that there was no evidence given showing the amount of damage sustained from each of the breaches of the contract, but only a state-ment of the sum total sustained by reason of all the breaches. The bill of exceptions does not purport to set forth all the evidence given upon the trial of the case. There is a general statement that the plaintiff in error gave evidence by several witnesses that the houses were not completed according to the plans and specifications in the contract, in the particulars set forth in the assignment of breaches, and that the value, by reason of the omissions, structural defects and defective materials, was from two to three thousand dollars less on each house than it would have been had they been completed according to the contract, plans and specifications. This is not at all equivalent to saying that there is no evidence except as to the total damage. It is much more probable that on the trial such evidence was given, and that the state-

ment in the bill is simply a summary of the total amount of damage, which the evidence showed in detail had been sustained from each particular breach. It does not mean that there was no evidence of the amount of the damage caused from each breach that was proved. It is very improbable that the case was tried in any such manner. The amount of damage on account of each breach that was proved would most naturally have also been proved as part of the case.

It is part of the duty of a plaintiff in error, affirmatively to show that error was committed. It is not to be presumed, and will not be inferred from a doubtful statement in the record. We think in this case the record fails to show the absence of the evidence as argued by the plaintiff in error.

(2) If, however, we assume that there was no such evidence in detail and only a conclusion given as to the total amount of damage, and if we further assume that the twelfth request of the plaintiff in error was charged by the court, and the right of recovery was thereby limited as stated, it does not appear that the plaintiff in error made any point on the trial of the absence of the evidence of damage in detail, or that the court was asked to direct a verdict for the defendant on account of its absence. If there were no evidence of the amount of damage caused by each particular breach, but only of the total amount sustained, and the plaintiff in error desired to avail itself of that objection to a recovery for the particular damage permitted, counsel should have called the attention of the court to the point, and requested a direction of a verdict for the defendant on that ground. No such request was made, and nothing was said which would show that counsel for the plaintiff in error had any such objection in mind, and he cannot argue an objection here which was never taken in the trial court.

(3) In truth the court did not limit the recovery of damages, as is set forth in the above-mentioned twelfth request to charge, but permitted a recovery for the total sum of the various items proved.

The defendant in error insists that the twelfth request, instead of being charged, was in fact refused by the court. We think that in this assertion the defendant in error is perfectly right. Some little confusion at first appears on looking in the record, caused by a mistaken reference to the request which was charged, but a more careful perusal of all that appears regarding the charge of the court, and the requests and refusals to charge, brings us to the conclusion that there is not the slightest doubt that the court refused the twelfth request, instead of charging it. In such case there was no occasion for segregating the items of damage proved.

This leaves the argument of the plaintiff in error upon the first ground wholly without merit.

The other ground taken for a reversal in this case is that the architect's certificate of July 29, 1901, was conclusive between the parties and was a bar to the maintenance of this action.

Mr. Palmer, in his letter or certificate, reported the completion of the buildings according to his interpretation of the plans and specifications, and that where deviations had been made from them it was where the same were inconsistent and ambiguous, and in all cases of inconsistency and ambiguity the work had been done according to the interpretation most beneficial to the houses.

We do not think this certificate was conclusive, and it did not, therefore, bar the maintenance of this action. The language of the contract, upon which the claim is based, is set out in the foregoing statement, and while it provides that the work shall be completed agreeably to the drawings and specifications made by M. D. Hensey, architect, in a good, workmanlike and substantial manner, to the satisfaction and under the direction of Bates Warren, or the architect placed in charge by him, to be testified by writing or certificate under the hand of Bates Warren, or the architect placed in charge by him, it omits any provision that the certificate shall be final and conclusive between the parties. In other words,

the contract provides that before the builder can claim payment at all he must obtain the certificate of the architect; but after such certificate has been given, there is no provision which bars the plaintiff from showing a violation of the contract in material parts, by which he has sustained damage. A contract which provides for the work on a building to be performed in the best manner and the materials of the best quality, subject to the acceptance or rejection of an architect, all to be done in strict accordance with the plans and specifications, does not make the acceptance by the architect final and conclusive, and will not bind the owner or relieve the contractor from the agreement to perform according to plans and specifications. *Glacius* v. *Black*, 50 N. Y. 145; *Fontano* v. *Robbins*, 22 App. D. C. 253.

There is also in the contract the provision already mentioned in the statement of facts in regard to payments as the work progressed, which showed that a certificate was to be obtained from and signed by the architect in charge, before the contractor was entitled to payment, but it was provided that the certificate should "in no way lessen the total and final responsibility of the contractor; neither shall it exempt the contractor from liability to replace work, if it be afterwards discovered to have been done ill, or not according to the drawings and specifications either in execution or materials." There is the further positive agreement of the contractor to execute and complete all the work as set forth in the specifications in the best and most workmanlike manner, and also that final payment is to be made only when the houses are completed in accordance with the agreement and the plans and specifications prepared therefor.

The whole contract shows, in our opinion, that the certificate that the houses had been completed according to the contract and its plans and specifications was not to be conclusive of the question, and the plaintiff was not thereby precluded from showing that in fact the contractor had not complied with his contract, and the plaintiff had thereby sustained

damage. The cases cited in the opinion of the court below, *Fontano* v. *Robbins*, 22 App. D. C. 253; *Bond* v. *Newark*, 19 N. J. Eq. 576; *Memphis &c. R. R. Co.* v. *Wilcox*, 48 Pa. St. 161; *Adlard* v. *Muldoon*, 45 Illinois, 193, are in substance to this effect. To make such a certificate conclusive requires plain language in the contract. It is not to be implied. *Central Trust Co.* v. *Louisville &c. R. R. Co.*, 70 Fed. Rep. 282, 284. The cases of *Sweeney* v. *United States*, 109 U. S. 618; *Martinsburg &c. Railroad Co.* v. *March*, 114 U. S. 549; *Chicago &c. Railroad Co.* v. *Price*, 138 U. S. 185; *Sheffield &c. R. R. Co.* v. *Gordon*, 151 U. S. 285, were all cases in which the contract itself provided that the certificate should be final and conclusive between the parties.

The only case in which the certificate of the architect or his decision was by the contract made final was in case of doubt as to the meaning of drawings, in which case reference was to be made to the architect in charge, whose decision was to be final.

Both grounds urged by the plaintiff in error in this court for reversal of the judgment are untenable, and it must therefore be

*Affirmed.*

MR. JUSTICE BREWER took no part in the decision of this case.