# GEORGE A. FULLER CO. *v.* McCLOSKEY.

---

APPEAL AND ERROR; BILLS OF EXCEPTIONS; TRIAL; ESTOPPEL; MASTER AND SERVANT; OBJECTIONS AND EXCEPTIONS; PLEADING; NEGLIGENCE.

1. In view of the disregard by counsel of rule 5 of this court relating to the preparation of bills of exceptions, the court will hereafter take action upon its own motion in such cases. If counsel cannot agree upon a proper bill of exceptions, it is the duty of the lower court to adjust their differences, and settle the bill in conformity with the rules of this court.

2. Where in a trial of an action at law the question is whether a given person was or was not a servant of the defendant, and there is no conflict of evidence upon the facts, the question is one of law for the court and not of fact for the jury.

3. Where a contractor for the erection of an office building, in contracting with a subcontractor to do the painting, agreed that the latter should have the use of the elevator in painting the elevator shaft, the contractor is estopped to say that he did not have authority to agree to such use of the elevator.

4. An elevator operator is the servant of a contractor for the erection of an office building, and the contractor is liable for his negligent operation of the elevator, whereby a painter employed by a subcontractor is injured while painting the elevator shaft, where the contractor agreed to furnish the subcontractor elevator, power, and operator for use in painting the shaft, when they were not otherwise in use, and where the subcontractor was to have no control over the elevator except the right to signal the operator when to start and stop the machine; and it is immaterial whether the amount paid by the subcontractor for such privilege was to be ultimately credited to the owner of the building, or not. (Following *Sonnemann* v. *Philadelphia, B. & W. R. Co. ante,* 279).

5. An objection to a declaration on the ground that it contains no proper allegation of negligence cannot be based on a motion to direct a verdict for the defendant, unless the motion points out such alleged defect. The trial court has no reason to assume that such a motion is based upon grounds other than those brought to its attention.

6. A declaration in a personal injury case examined and *held* to sufficiently allege a breach of duty on the part of the defendant.

7. What is a reasonable precaution under some circumstances may constitute negligence under other circumstances, and it is proper for the trial court to amend a special instruction to the effect that the plaintiff cannot recover if he placed himself in a dangerous position when he might have placed himself in a safe position, by directing attention to that fact.

No. 2153.   Submitted Oct. 19, 1910.   Decided Nov. 1, 1910.

HEARING on an appeal by one of two defendants from a judgment of the Supreme Court of the District of Columbia in an action to recover damages for alleged personal injuries, a verdict for the other defendant having been directed by the court.                                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

By this appeal the appellant, the George A. Fuller Company who was one of the two defendants below, and who will be designated as defendant here, seeks a reversal of the judgment of the supreme court of the District of Columbia upon a verdict in favor of appellee, Wilson A. McCloskey, plaintiff below, in an action for the recovery of damages occasioned by the alleged negligence of the defendant's elevator operator in failing to stop the elevator, on which the plaintiff was riding, as directed by plaintiff.

The defendant company contracted with William B. Hibbs to erect for him an office building on Fifteenth street in this city. The work was to be completed by a time certain. This contract did not include the installation of an elevator. That work was provided for in a contract between Hibbs and the Otis Elevator Company. The elevator company installed its elevator long before the completion of the building. This elevator, down to the time of the injury to the plaintiff, had not been turned over to the owner of the building, but was operated by an employee of the Otis company, who was paid and generally controlled by that company. After its installation the defendant company entered into an arrangement with the elevator company by which it became entitled to use this elevator in the prosecution of its work, paying to the elevator company $3 per day, which was to cover the wages of the caretaker or operator aforesaid, the Otis company reserving the primary right to use the elevator. Under this arrangement the defendant company was to have no control over the elevator operator, other than to notify him when to start and when to stop his machine.

The defendant company entered into a subcontract with the Robert E. Mackay Company of New York for the painting required by its contract with Mr. Hibbs. The plaintiff was an employee of the Mackay company. The elevator shaft was included in this subcontract. To paint this it was, of course, necessary that some means be provided whereby workmen

could ascend and descend the shaft. Therefore the Mackay company entered into an agreement with the defendant company by which the defendant company agreed to furnish the Mackay company, for use in painting said shaft, elevator, power and operator at any time that the elevator company or the defendant company did not want them. Nothing whatever was said about the arrangement between the elevator company and the defendant company, th agreement between the Mackay and the defendant company proceeding upon the theory that the equipment and elevator were under the control of the defendant company. The Mackay company was not to have, and in fact did not have, any control over the operator other than to direct him when to start and when to stop his elevator while thus temporarily used as a movable staging.

Upon the day of the accident, plaintiff and another workman were on the roof of the elevator, touching up the walls of the shaft. They had worked down until the floor of the car was on a level with the first floor of the building. To finish the walls of the shaft between the first and second floors of the building, the space then occupied by the body of the car, it became necessary to get under the car. To do this it was necessary for the painters to be taken to the next or second floor landing. The plaintiff was standing on the rim or ledge around the top of the car, and facing the center of the car. He had a paint box and brush in his hands. The other painter was on another side of the top, with his back to the plaintiff. This rim or ledge was about 6½ inches wide. Plaintiff called to the elevator operator to take him and the other painter up to the second floor, and let them off there. There was evidence before the jury that when the car had reached a point where plaintiff had directed that it be stopped the car paused and suddenly started again, throwing plaintiff off his balance, which he was unable to regain until the car had reached the fifth floor, where he was caught in the weights which passed the car at that point.

In his declaration the plaintiff avers that the defendant company entered into an agreement with the Mackay company,

for hire, to operate said elevator "so that said company's employees might stand on top of the elevator, and that it might be lowered or raised as was necessary in the painting of said shaft, and to start and stop said elevator whenever and wherever requested." It is then averred that in pursuance of this contract with the Mackay company the defendant company employed the Otis Elevator Company to operate and run said elevator in accordance with said agreement. The duty of the defendant company and also of the elevator company is then set forth, and the breach is averred in the following words: "That said plaintiff on the day aforesaid had finished his work, he then being on the top of the said elevator, below the second floor, requested the said defendant Otis Elevator Company, its servants and employees, to stop said elevator at the second floor, so that he might get off and alight therefrom; but the said *defendants,* not regarding their said duties, did so negligently, carelessly, and recklessly operate and cause to be operated said elevator, that the same was carried up to the fifth floor, where the said weights and elevator meet, as aforesaid, in direct violation of the request of the plaintiff to stop the same at the second floor."

At the trial of the case the court, without objection on the part of the plaintiff, directed a verdict in favor of the elevator company, the other of the two defendants, there being no evidence to charge that company with any responsibility in the premises.

*Mr. E. S. Duvall, Jr.,* and *Mr. E. S. Colbert* for the appellant.

*Mr. S. V. Hayden, Mr. Hayden Johnson,* and *Mr. Herbert L. Franc* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Before proceeding to a consideration of the various assignments of error, we deem it necessary to direct attention to the

violation of rule 5 of this court in the preparation of the bill of exceptions in this case. We have had occasion heretofore to advert to the apparent disregard, on the part of counsel, of this rule, and have indicated that upon proper motion such a bill of exceptions would be stricken out and the appeal dismissed. It being apparent that more drastic measures are necessary to enforce a compliance with this rule, we now state that the court will hereafter feel called upon to take action upon its own motion in such cases. Counsel should make an effort immediately after the trial of a case, to agree upon a proper bill of exceptions; and if they are unable to reach such an agreement the matter should speedily be brought to the attention of the trial justice, whose plain duty it will then be to adjust the differences of counsel, and settle a bill of exceptions in conformity with the rules of this court. Such a bill of exceptions as is here presented entails a needless burden upon this court, and an equally needless expense upon the parties to the suit.

1. It is insisted that "it was error in the trial court to decide as matter of law, under all the evidence that Locke (the elevator operator) was the servant of the Fuller Company." This assignment of error goes to the root of the case. It is conceded that there was no conflict in the evidence upon the facts relating to Locke's employment. It therefore was the sole province of the court to determine to whom Locke sustained the relation of employee at the time the accident occurred. In other words, it was a question of law, and not of fact. Did the court err? We think not. So far as this inquiry is concerned, the elevator company may be eliminated from consideration. There was no privity whatever between that company and the Mackay company. The defendant company had a limited right to the use of this elevator equipment, including the operator. It chose, for a consideration, to furnish to the Mackay company by the hour, upon the conditions previously mentioned, this elevator equipment and operator. The arrangement, therefore, was between the defendant company and the Mackay company, and the defendant company

cannot now be heard to say that it did not have authority to make the contract. Eliminating the elevator company, the question may be stated thus: The defendant company to its own advantage, permitted the Mackay company to use its elevator as a sort of movable staging, but the only control the agreement contemplated and permitted was limited to the right to signal the elevator operator when to start and when to stop his machine. In no other respect was this operator under the control of the Mackay company. The moment the defendant company wanted to use this elevator the painters were compelled to suspend work. We do not deem it material whether the amount paid by the Mackay company for this privilege was ultimately credited to the owner of the building, or not, The defendant company was the general contractor. It used this elevator in its work. Had any other device been employed by the Mackay company in painting the elevator shaft, it is evident that the operation of the elevator would necessarily have been temporarily suspended. It follows that the arrangement between the principal and subcontractor was to their mutual interest. The defendant company was primarily responsible for the painting of this shaft. It had made a subcontract with the Mackay company to do this work. That the work might be done expeditiously and with as little interruption to its own use of this elevator as possible, it said to the Mackay company, in effect, you may paint this shaft from the top of our elevator when we are not using it, and we will tell Locke (the operator) to operate the elevator to suit your convenience, that is to say, to start the elevator when you signal, and to stop it whenever and wherever you wish it stopped. For this service we will charge you $1 an hour.

Applying the rule announced by the Supreme Court of the United States in the case of *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 53 L. ed. 480, 29 Sup. Ct. Rep. 252, followed by this court in *Sonnemann* v. *Philadelphia, B. & W. R. Co. ante,* 279, we think the correctness of the ruling of the learned trial justice is apparent. In the *Standard Oil Case* the plaintiff was a 'longshoreman in the employ of a master steve-

dòre who was engaged in loading a ship with oil under a contract with the defendant. The plaintiff, while working in the hold, was injured by a load of cases containing oil, which had been negligently lowered. The motive power for conveying these cases of oil from the dock to the ship was a steam winch and drum, and the hoisting and lowering was accomplished by means of a tackle, guy ropes, and hoisting ropes. The tackle and ropes, properly equipped, were furnished by the stevedore. The winch and drum were owned by the defendant, and placed on its dock at a convenient distance. The work of loading was all done by employees of the stevedore, except the operation of the winch. This was done by a winchman in the general employ of the defendant. The winchman was hired and paid by the defendant, the stevedore agreeing to pay the defendant a certain price per thousand for the hoisting. The stevedore had no control over the winchman except to give him the proper signals for hoisting and lowering. The negligence in that case consisted in lowering a draft of cases before receiving a signal. The court held that the winchman remained the servant of the defendant while performing the work described.

In the *Sonnemann Case,* the Knox Express Company undertook to haul and load into a car a quantity of iron for one Simon. The defendant railroad company had for a number of years maintained a movable engine in its freight yard, equipped with derrick and boom, which it furnished without charge to those loading heavy articles upon its cars. The engineer was in the general employ of the defendant, and could be discharged by it alone. The only control exercised by the shipper over this engineer was to give the signals for hoisting and lowering. The court ruled that the engineer remained the servant of the railroad company while engaged in said work for the express company.

In the present case the elevator operator was not in the general employ of the Mackay company, and was not paid by it. Neither was he subject to its discharge. There was an additional reason for restricting the control of the Mackay com-

pany over this operator. It is well known that an elevator is a more or less dangerous and complicated mechanism, requiring in its operation some special knowledge and skill. The record shows that Locke possessed these qualifications. It is apparent that painters ordinarily would not. For this additional reason the defendant company was unwilling to surrender the general control of this elevator to the Mackay company. In other words, it insisted upon operating the elevator itself, allowing the Mackay company to do no more than to give the requisite signals to the operator.

2. This assignment of error questions the sufficiency of the plaintiff's declaration, and is based solely upon a motion by the defendant, at the close of all the evidence, that the jury be instructed "that under the pleadings and all the evidence their verdict should be for the defendant, the George A. Fuller Company." The defendant now contends that there was no proper allegation of negligence against it in the declaration, and hence that this motion for a verdict should have been granted. It is well settled that such an omnibus motion will not reach such a defect in the declaration, assuming for the moment that such a defect in fact existed. It is not the duty of the trial court, but the duty of counsel, to examine the declaration and point out such alleged defects, and unless this is done it must be assumed by the appellate court that they were waived. The reason for this rule is very obvious. To illustrate: One of the defenses interposed by the defendant at the trial of this case was contributory negligence by the plaintiff. Another that the elevator operator, at the time of the accident, was not its servant, but the servant of the Mackay company, and hence the fellow servant of the plaintiff. The trial justice, nothing having been said as to the sufficiency of the declaration, had no reason to assume that this motion for a verdict was based upon grounds other than those specifically brought to his attention. If the sufficiency of the declaration was to be challenged, it was the duty of the defendant to say so, and his failure in that regard was fatal. *Mercantile Trust Co.* v. *Hensey,* 205 U. S. 298, 51 L. ed. 811, 27

Sup. Ct. Rep. 535, 10 A. & E. Ann. Cas. 572. We may add, however, that, assuming this question properly raised, it is without merit. The plaintiff, probably not knowing the existing relation between the original defendants, charged negligence on the part of both, and a breach of duty on the part of this defendant is, we think, sufficiently set forth in the two parts of the declaration already quoted.

3. The defendant asked the court to charge the jury that if the evidence showed that the accident was occasioned wholly or in part because the plaintiff "had placed himself in an exposed and dangerous position on the top of the elevator, when he might readily have placed himself in a safe and secure position, the verdict should be for the defendant." The court granted the charge after amending it so that it read: "If the accident to the plaintiff was occasioned wholly or in part by reason of the fact that he had placed himself in an exposed and dangerous position on the *ledge around* the top of the elevator car, *with reference to obeying the signals to stop at the second floor, if you find that such signals were given,*" etc. The plaintiff did not desire to go to the fifth floor, but, on the contrary, had signaled the operator to stop at the second floor. The evidence showed that he was in no danger from the weights until the elevator reached the fifth floor. What, therefore, would have been reasonable precaution on his part in preparing to ascend to the second floor might have constituted negligence had he been preparing to ascend to the fifth floor. Having this in mind, the court properly modified the prayer. Whether, after the plaintiff discovered that his signal to stop at the second floor had been disregarded, he exercised due care,—that is, whether he did what a reasonably prudent man would have done in the circumstances to avoid injury,—was covered in another part of the charge.

Finding no error in the record the judgment is affirmed, with costs. *Affirmed.*

An application by the appellant for a writ of error to the Supreme Court of the United States was allowed, and it was issued November 11, 1910.