154 P.2d 247

In re BROWN'S ESTATE.

RODEY v. FIRST NAT. BANK IN ALBUQUERQUE et al.

No. 4841.

Supreme Court of New Mexico.

Dec. 5, 1944.

Don L. Dickason, of Albuquerque, for appellant.

Bryan G. Johnson, of Albuquerque, for appellee Elizabeth Hall.

Carl H. Gilbert, of Santa Fe, for appellees the executors.

MABRY, Justice.

This is an appeal by Pearce C. Rodey, an attorney-at-law, from an order fixing at $5,000 his fees in connection with the administration of decedent's estate. The attorney had asked for a fee of $10,000. While the trial court found that the serv-ices of appellant were of the reasonable value of $10,000, that nevertheless, because of the condition imposed by a certain contract under which he was employed and by which any fee earned above $5,000 was to be contingent upon approval by one of the parties having an interest in the estate, one Jean Elizabeth Hall, he could recover no more than the minimum fee so fixed.

There is no substantial dispute as to the facts and no material conflict in the evidence. The estate is of a value of more than one million dollars, being represented largely by corporation stock and securities. The findings, conclusions and judgment of the trial court were as follows:

1. That all of the allegations of the petition for allowance of attorneys' fees herein are true.

2. That the total fees which the majority of the executors herein have recommended for allowance to the attorneys who, from time to time, have represented them herein, are substantially less than the total fees at the statutory rate, for the services of attorneys on the administration of this estate.

3. That all of the executors herein have agreed to an allowance to Carl H. Gilbert of a fee of $20,000 for his services herein; that no beneficiary or other interested party has objected to such allowance; that said Carl H. Gilbert has agreed in open court to accept said sum in full payment for his services as an attorney for the executors herein; that said fee is substantial-

ly less than that proportion of the attorneys' fees at the statutory rate which the services of said attorney, heretofore performed and hereafter to be performed as an attorney for the executors herein, bears to the total services performed and to be performed by all attorneys for the executors herein and that no proper cause has been shown for reducing the fees of said Carl H. Gilbert below the said sum.

4. That the services of Pearce C. Rodey, as one of the attorneys for the executors herein, heretofore performed and hereafter to be performed by said attorney, are reasonably worth the sum of $10,000 and that said sum is substantially less than that proportion of the attorneys' fees at the statutory rate, which the services of said attorney, heretofore performed and hereafter to be performed as an attorney for the executors herein, bears to the total services performed and to be performed by all attorneys for the executors herein.

5. That by the terms of the written contract entered into between First National Bank in Albuquerque, James H. Russell and Lemuel Charles White as executors and Carl H. Gilbert, Lowell White and Pearce C. Rodey, as attorneys, a copy whereof is attached to the petition herein, it is provided that any increase above $5,000 in the fees of said Pearce C. Rodey shall be subject to the approval of Jean Elizabeth Hall and that said Jean Elizabeth Hall has, in open Court, objected to any increase above the sum of $5,000 in the fees of said attorney.

6. That Lowell White served as one of three attorneys for the executors herein for the period between March 12, 1943, and August 23, 1943, only; that the $7,500 heretofore paid said Lowell White is substantially equal to the percentage of the fee contracted to be paid to said attorney which his service prior to his discharge bears to the total service contracted to be performed by him and that said sum of $7,500 equals the fair value of the services performed by said attorney for the executors herein.

7. That during the period that said Lowell White was employed as an attorney for the executors herein, he attempted to bring about the removal of First National Bank in Albuquerque as one of the executors herein, without the consent or knowledge of said Bank, and otherwise so conducted himself that James H. Russell, Lemuel Charles White and First National Bank in Albuquerque, who, during the period of his employment were the sole executors herein, lost confidence in and were dissatisfied with the services performed by the said Lowell White as one of their attorneys and that he was discharged as such attorney because of their said loss of confidence and satisfaction.

8. That proper cause has been shown for fixing the fees of said Lowell White at the sum of $7,500 for his services as one of the attorneys for the executors during the period of his employment as such attorney herein.

And from the foregoing findings of fact the Court concludes as a matter of law, as follows:

1. That it was implied in the written contract for the employment of the attorneys for the executors herein, a copy whereof is attached to the motion for the allowance of attorneys' fees in this cause, that each of the attorneys specified in such contract should so conduct himself as to retain the confidence of the executors as their clients and render service as an attorney which would be satisfactory to them; that it was further implied as a condition of said contract that the executors who were parties thereto might discharge any of the attorneys who were employed thereby at any time and thereby terminate said contract; that upon failure of said Lowell White to retain the confidence of and give legal services which were satisfactory to the executors herein, they were legally entitled to discharge him as one of their attorneys, and that the measure of the right of the said Lowell White to fees herein is the reasonable value of his services performed for said executors prior to his discharge as such attorney.

2. That the discharge of said Lowell White did not relieve any of the attorneys for the executors herein from the limitation on the amount of their fees as specified in the written contract, a copy whereof is attached to the petition for allowance of attorneys' fees herein and that notwithstanding the fact that Jean Elizabeth Hall was not a party to said contract, the parties thereto at all times have been and now are without power to modify the terms thereof without the consent of said Jean Elizabeth Hall.

3. That the provisions of said written contract specifying that payment of fees to Pearce C. Rodey in excess of the sum of $5,000 shall be subject to the approval of Jean Elizabeth Hall, prevents the allowance to said Pearce C. Rodey of any sum in excess of $5,000 by way of attorneys' fees herein.

4. That the fees of the various attorneys who from time to time have represented the executors herein should be fixed and allowed as hereinafter ordered; and

Now, therefore, it is ordered, that the fees of the attorneys who from time to time have represented the executors herein, for their services in that connection, are hereby fixed and allowed as follows:

(1) The fees of Carl H. Gilbert for his services heretofore rendered and hereafter to be rendered in connection with the administration of this estate, as one of the attorneys for the executors herein, are hereby fixed and allowed in the total sum of $20,000, upon which there is to be credited the sum of $7,500 heretofore paid said attorney, leaving an unpaid balance of $12,500 upon such fees, which said sum the executors herein are hereby ordered to pay said attorney at the conclusion of the administration of this estate.

(2) The fees of Pearce C. Rodey for his services heretofore rendered and here-

after to be rendered in connection with the administration of this estate, as one of the attorneys for the executors herein, are hereby fixed and allowed in the total sum of $5,000, upon which there is to be credited the sum of $2,500 heretofore paid said attorney, leaving a balance of $2,500 upon said fees, which said sum the executors herein are hereby ordered to pay said attorney at the conclusion of the administration of this estate.

(3) That the total fees of Lowell White for his services as one of the attorneys for the executors herein during the period of his employment as such attorney are hereby fixed and allowed at the sum of $7,500, all of which has been heretofore paid said attorney, and that no further payments shall be paid to him on account of fees by the executors herein.

The issue is single—and simple—even though it can be said a correct disposition thereof may be difficult. The decisive question to be answered is this: Was the contract in question by which Mrs. Hall was given the veto power upon any compensation to be paid appellant over and above the $5,000 in operation and effect after the discharge of Attorney White, one of the three attorneys employed at the time under the single contract? Appellant, in his brief, thus correctly states the issue:

. "The appellant made a special agreement concerning his fees and must be limited to the terms of this agreement or not depending upon whether or not the agreement is still operative and effectual.

If it is not still in effect and controlling, as we contend it is not, the appellant is entitled to recover upon the basis of the reasonable value of his services which the District Court has specifically found to be $10,000.00."

There is no finding of the court as to the character of the work, in detail, or of how much more labor and responsibility was imposed on appellant when he had only one instead of two, aiding. It is conceded that some additional work and responsibility were both thus imposed, and evidence offered by appellant, and uncontradicted, is to the effect that he fixed his fee and the conditions under which he would accept employment with the understanding that not two, but three, attorneys would share in the work and the responsibility.

Appellant does not question the validity of the contract provision that any additional compensation must rest upon the approval of Mrs. Hall; he says, simply, that her power to veto over the discretion of the executors of the estate who recognize the justice of the claim and who have been at all times, and now are, willing to pay the fee claimed, did not survive the termination of the contract cancelled out by operation of law when one of the attorneys so jointly employed was discharged by the executors.

 The correct rule is commented upon in 5 Page on Contracts, 4615, Sec. 2625, where it said that contractual provisions providing for a third party's control of payment "are not favored in con-

struction, and are not extended beyond the words of the parties or the necessary inferences which must be drawn from the words which are used." See also 3 Williston on Contracts, Rev.Ed., 2244, 2245, Sec. 798. To make a third party's decision in such circumstances conclusive requires plain language in the contract; and is not to be implied. Mercantile Trust Co. v. Hensey, 205 U.S. 298, 27 S.Ct. 535, 51 L.Ed. 811, 10 Ann.Cas. 572; 54 A.L.R. 1255.

It is true that we are not here troubled with the language of the contract as it purports to give the veto power upon any additional fee to the third party, Mrs. Hall; it is conceded that such power resides in her *if* the contract remained in force. The legal principles above enunciated are relied upon by appellant merely as affording support for his contention that at least there can be no presumption that the contract existed after the executors discharged one of the three attorneys who were employed for the purpose and expected to jointly perform the services to be required.

Appellant, in his brief, reasons:

"Here the Appellee Hall is clearly attempting to extend the meaning of her veto power beyond the words used in, and the situation contemplated by, the contract, and to apply it to conditions which were *essentially* changed. In essence, there is no difference between this type of stipulated measure of compensation and any other. Suppose the bargained fee had been a sum certain instead of an amount flexible on a condition. Could the appellant be required to perform $\frac{1}{2}$ the services in probating an estate for the fee that he had contracted to accept in return for less than $\frac{1}{3}$ of such services? Wherein is the present case different from that? Whether the fee was a stipulated sum, or at a stipulated sum plus another to be determined by a third person, the fact remains that the Appellant's duties were substantially and essentially increased beyond what was contemplated by the parties at the time of making the contract. A new contract resulted from the change, and to apply the old provision as to remuneration to the new duties is to hold the Appellant to a contract *he never made*."

Some circumstances appear from the record which might suggest that because of personal ill feeling and differences arising over the discharge of Attorney White, who was, incidentally, also the personal attorney of Mrs. Hall, that she acted arbitrarily in declining to approve an additional fee for appellant. But no point in this respect is made or relied upon by appellant.

The executors of the estate did not in the lower court and do not here dispute the claim of appellant. They take the position here, however, that they should favor neither appellant nor Mrs. Hall in the controversy, but should leave to a determination by this court the single issue of law, viz.: Whether or not, under the circumstances, the contract remained in force and effect after the discharge of one of the attorneys in the case.

It is urged by Appellee Hall that after it came to the knowledge of appellant that two, and not three, attorneys must now share the labor and responsibility involved in the case that a burden rested upon him to notify the executors that he would decline to be bound by the contract and that any further services to be performed would be upon the basis of quantum meruit and not under the terms of the specific contract. Appellant replies that it should have been assumed by the executors that in retaining him and requiring of him service and imposing responsibility to the greater extent, the contract was thereby considered abrogated and to be no longer binding; that a greater responsibility rested upon the executors to inquire whether appellant wanted to continue, nevertheless, under the changed circumstances of the employment before exacting of him the additional labor and responsibility naturally to be imposed.

Counsel seem unable to find any case in point, but cites that of Baxter v. Billings et al., 8 Cir., 83 F. 790, 792, in which case recovery for the full stipulated fee was denied to the surviving one of two attorneys employed to perform certain services at a specified fee upon the ground that the contract was one of personal trust and confidence which ended with the death of one of the two specifically employed. The rule governing contracts generally, would, doubtless, govern. The terms of employment are not fulfilled, says the court in that well reasoned and often cited case, although the surviving attorney associates himself with others of equal or greater ability and carries the litigation to a successful conclusion. "An obligation to furnish and apply to the conduct of a lawsuit the learning, ability, and experience of two particular attorneys is not performed by furnishing the services of one of them, although the services of many others of equal or superior ability are also furnished," the court held. See also In re Trybom's Estate, 168 Misc. 484, 6 N.Y.S.2d 29, 31, and Roe v. Sears Roebuck & Co., 7 Cir., 132 F.2d 829.

Conceding the above rule to be sound, appellant argues, a like rule should operate in favor of an attorney who has, by the conduct of the other parties to the contract, had imposed additional duties and responsibility by virtue of requiring of him and one other to perform the work and assume the responsibility which the contract contemplated should be shared by three.

We said in Elsea v. Broome Furniture Company, Inc., 47 N.M. 356, 143 P.2d 572, 584: "Many considerations enter into the matter of fixing attorney fees, not the least important of which are: the ability, standing, skill and experience of the attorney; the nature and character of the controversy; the amount involved, the importance of the litigation and the benefits derived therefrom. Thornton on Attorneys at Law, § 449."

Appellant points to the finding of the court that the value of his services were $10,000 as showing that he had in fact

performed services and assumed responsibility because of the work being left largely to two attorneys instead of three, in support of his claim that he could not be expected to abide by the original contract when the other parties thereto, the executors who employed him, had, by their act, however justified, discharged one of the three with whom the work and responsibility were to be shared. The veto power granted to Mrs. Hall by the agreement was granted at appellant's own special request, he points out, with all confidence in her fairness. It was, he says, to reassure her against any fear she might entertain of excessive attorney fees being charged to the estate of which she was a beneficiary, and the contract, taken as a whole, was based upon the assumption that the work would be divided among three attorneys.

It is suggested that if this were a case where each of the three attorneys were to perform wholly separate and distinct service in connection with the employment, and no additional duty was, or could be under the contract, imposed upon any one it might be called a severable contract as to each of the attorneys so employed for such specific services and the trial court's decision would then be correct. But, it is argued, here we have no such contract; the duties are not so divided, each attorney was responsible for the proper handling of *all* matters connected with the administration of the estate, and throughout the administration of the estate, and throughout the administration proceedings each of the attorneys could properly expect the assistance of, and a sharing of the responsibility by, the other two. Under such circumstances, as in the case at bar, it is argued, although the discharge of Mr. White might not be said to constitute a breach of contract as to him, it did, nevertheless, under the circumstances, constitute a partial recission which entitled the discharged attorney to recover for the services rendered up to that time. In re Winston's Will, 40 N.M. 348, 59 P.2d 904. Why then, appellant inquires, should it not give a like right to appellant, who, without fault on his part, was thereby required to assume a burden beyond that contemplated by the contract? We think it does give such right.

■ The general rule that an attorney is required, without additional compensation, to perform all services required in the interest of his client and reasonably to be contemplated at the inception of the contract of employment (Falloon, Adm'r, et ux. v. Miles, 102 Neb. 843, 170 N.W. 191, 2 A.L.R. 840) does not apply here. It cannot be said that the parties to this agreement could reasonably have contemplated the summary discharge of one of the three employed to perform services.

We are thus called upon to resolve the single query of whether the contract was thus abrogated and cancelled out. Once that question is determined, nothing further remains in the case, since the court has found that the services performed by appellant is of the reasonable value of $10,-000.

We hold that the contract was, by the discharge of Attorney White, abrogated and that appellant was, under the circumstances, entitled to rely upon quantum meruit as the measure of his recovery.

It is therefore ordered that the order and judgment heretofore made and entered, as it affects the attorney fee to be allowed appellant, be modified and corrected so as to show an allowance to appellant as his total fee herein of $10,000.

SADLER, C. J., and BICKLEY, BRICE, and THREET, JJ., concur.