## LIBERTY PRODUCTS CORPORATION v. H. K. FERGUSON CO.

### Civ. No. 10380.

United States District Court
E. D. New York.

Feb. 6, 1950.

Bainton, McNaughton, Douglas & Leiby, New York City, for plaintiff (Henry W. Steingarten and Louis C. Bernst, New York City, of counsel).

J. Vincent Keogh, U. S. Atty., Brooklyn, N. Y. for defendant (Eli Resnikoff, Asst. U. S. Atty.; New York City, of counsel).

BYERS, District Judge.

This is a plaintiff's motion to strike the first and second defenses pleaded in the answer to a complaint which alleges breach of a written contract and resultant damages.

The contract is dated November 10, 1947, and was modified by written agreement dated May 10, 1948, whereby the

completion date was extended from 25 weeks from the starting date as originally provided, to August 1, 1948.

The parties to the instruments are the above-named, and the documents are Exhibits A. and B. attached to the complaint. As a caption to the first, there appears the following:

"Prime Contract AT-30-2-Gen-16

A-E-M Contract No. S-26

Subcontract No. PRO 2 (S-26-34)"

The recitals are that the defendant is called the "Contractor" and the plaintiff the "Subcontractor". That the former has contracted with the Associated Universities, Inc., Upton, Long Island, called the Universities, under a "prime contract" dated September 15, 1947, to perform certain of the work set forth in another contract between the Universities and the United States of America, to be called the "Government", represented by the United States Atomic Energy Commission, which is that referred to in the first line of the Caption.

That the Contractor desires that the Subcontractor perform "a certain specialized machining operation on materials to be used in such work; and Whereas, in the interest of security it is necessary to perform this work at the Brookhaven National Laboratories", called the site;

The services are the supply of personnel, equipment and materials as specified "for the machining of all of the rectilinear graphite bar stock presently located" at the site "which may be required by the Contractor under the prime contract".

Provisions appropriate to the methods of performance then follow; also the date when it shall commence and be completed.

The estimated total cost for completion is set forth with a schedule of hourly rates to be paid for various jobs, and matters incident to labor relations, written authority for overtime; invoices and their contents, grinding charges, equipment, records, etc., and other details which it is not necessary to enumerate.

The paragraph important to this motion is:

"9. DISPUTES

"Except as otherwise specifically provided in this subcontract, all disputes which may arise under this subcontract, and which are not disposed of by mutual agreement, shall be decided by a representative of the Commission duly authorized to supervise and administer performance of the work hereunder, who shall reduce his decision to writing and mail a copy of such decision to the parties hereto at their addresses shown herein, such written decision there (sic) shall be final and conclusive. Pending decision of a dispute hereunder, the Subcontractor shall diligently proceed with the performance of the work under this subcontract."

Paragraphs 10 to 14, inclusive, respecting the exclusive nature of the plans, designs and specifications of the Contractor, and the subjects of insurance, indemnity, possible patent infringement and litigation thereof, and plant protection, are not of present importance except as they lead up to paragraphs 15 concerning disclosure of information and 16 concerning the records and personal data of all employees of the Subcontractor.

Those paragraphs directly bear upon matters of national security which are necessarily involved in the rendition of the services which the contract contemplates.

Termination (Paragraph 23) of the contract can be effected by the Contractor when deemed to be "for the best interests of the Government". That paragraph also provides in part that, upon such termination, "The parties hereto shall by negotiation agree upon a reasonable amount of compensation for the cost, expenses, obligations, and commitments made and incurred in pursuance of this subcontract up to the date of such termination."

Seemingly there is no provision to govern the parties in the event that negotiations shall fail to ripen into an agreement.

The contract is agreed to be non-assignable by the Subcontractor.

As stated, the completion date was changed by supplemental agreement which did not otherwise modify the original contract.

The complaint alleges the rendition of the services contemplated, upon the basis of compensation to its employees provided in the contract, and its due performance, except in the matter of completion date, as to which it alleges waiver and increase of scope and extent, by action of the defendant.

That defendant has failed to pay the balance due of $132,699.60. The second cause as alleged is for special services in designing various fixtures said to be covered by a purchase order, concerning which the balance said to be due is $1,911.

The Answer contains denials, and two separate defenses to which this motion is addressed.

The first pleads as a complete defense that a dispute arose under the agreement "as to the balance, if any, that might be due plaintiff", which has neither been disposed of by mutual agreement, nor has it been decided by "a duly authorized representative of the * * * Commission" according to the provisions of paragraph 9 above quoted, with the result that the "plaintiff's claim herein is not now properly before this court".

So far as the terms of the quoted provision are concerned, this seems to be a case of first impression, in that there is no right of appeal to any official or agency reserved to either party, from a decision of a dispute which may arise under this subcontract. Nor is it an agreement to arbitrate differences.

Probably the clause was adapted from the one frequently employed in Government construction contracts found, for instance, in United States v. Callahan Walker Construction Co., 317 U.S. 56, at page 58, 63 S.Ct. 113, 87 L.Ed. 49, and in United States v. Moorman, 70 S.Ct. 288, 291, decided January 9, 1950. In each of those cases the contemplated disputes were "concerning questions of fact arising under this contract shall be decided by the contracting officer".

Here the expression is broader, namely, "all disputes which may arise under this subcontract". The Moorman case recognizes the efficacy in the contractual sense of such provisions, but remarks: "It is true that the intention of parties to submit their contractual disputes to final determination outside the courts should be made manifest by plain language." Citing Mercantile Trust Co. v. Hensey, 205 U.S. 298, at page 309, 27 S.Ct. 535, 51 L.Ed. 811, 10 Am.Cas. 572, which involved the effect to be given to an architect's certificate provided for in the contract.

■ It seems to me that the question of the possible finality of such a decision as is contemplated by paragraph 9 of this contract is not reached in disposing of this aspect of the motion, for the reason that, if indeed the defendant relies upon one, it is required to plead it. Nothing is found in the contract as a whole which casts upon the plaintiff the burden of alleging both the dispute and a decision of it which the plaintiff might seek to overcome upon grounds recognized as appropriate for presentation, namely, arbitrary or capricious conduct of the deciding agency.

The defendant asserts the fact that a dispute arose, but it does not allege the further facts as to a decision, etc., which, according to its understanding, might constitute the requisites of a plea in bar.

The second complete defense is also denominated as set off and counterclaim.

It alleges that the plaintiff, to induce the defendant to enter into the agreement, represented and agreed:

(a) That it would complete the work within twenty-five weeks of the starting time. That subject is covered by the supplemental agreement, and the allegations cited from the complaint.

(b) That it would use competent and experienced employees.

(c) That it would perform the work and render its charges properly subject to the approval and satisfaction of the defendant, etc.

(d) That the estimated cost as stated was based on a schedule of compensation to be paid employees, and overhead expens-

448

es called Burden, according to items set forth in this part of the Answer.

That these representations were false to the knowledge of plaintiff; that the defendant relied upon the truth of them in making the contract and payments thereunder.

That the plaintiff did not live up to the representations so ascribed to it; "did improperly classify and upgrade machine operators" and did not perform the work properly "and render its invoices properly and with the approval and to the satisfaction of the defendant", etc., with the result that the plaintiff "realized excessive, unreasonable and unwarranted profits", etc., as a result of which the defendant has declined to pay the plaintiff the balance alleged to be due, "pursuant to the orders and directions" of Associated Universities and the Commission "which have disputed plaintiff's right to receive payment as demanded by it".

█ The allegations above summarized seem to constitute matters of defense, in expanded and explanatory form, although the alleged misrepresentations in paragraph Tenth are legally insufficient since they do not deal with facts as they existed at the time the contract was entered into, but rather with intentions which the defendant attributes to the plaintiff. That paragraph should be stricken, or amended so as to limit the averments to alleged misrepresentations of facts which were current when the original contract was signed.

█ The Fifteenth paragraph alleges that by reason of the foregoing, "defendant has sustained damages in an amount not yet determined but possibly exceeding the amount demanded in the complaint."

That seems to fall within the precise language of Federal Rules of Civil Procedure, Rule 12(e), 28 U.S.C.A., since a responsive pleading to a counterclaim would be in order, because it "is so vague or ambiguous" that the plaintiff cannot reasonably be required to frame a responsive pleading.

The disposition of the motion is as follows:

As to the first complete defense, the motion is granted with leave to amend within 10 days from the date of the order herein, if the defendant is in a position to plead such a decision as paragraph 9 of the agreement contemplates. If that is done, the legal sufficiency of such a defense will then be a matter for determination in response to appropriate motion.

As to the second complete defense, set off and counterclaim:

Paragraph Tenth will be stricken, with leave to amend within the same period as above stated, so as to specify alleged misrepresentations on the part of the plaintiff with respect to facts existing on the dates of the contract, the supplemental contract, and the Purchase Order 461 referred to in paragraph Twelve of the complaint.

█ Paragraph Twelfth will not be stricken, since discovery is available to plaintiff to enable it to prepare for trial.

Paragraph Fifteenth will be stricken unless it is amended within the same period of time to conform to the provisions of Rule 12(e) in the respect above indicated.

Settle order on two days' notice.