## ORIGET v. HEDDEN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 19. Argued October 10, 11, 1894. — Decided December 3, 1894.

The remedy of an importer on a question of valuation is to call for a reappraisement; though, if his contention be that a jurisdictional question exists, he may make his protest, pointing out the defect, and stand upon it as the ground of refusal to pay the increased duty.

What an importer's agent says to an assistant appraiser, or conversations had subsequently to the appraisement, are not competent evidence in an action like this.

The court below properly excluded a question propounded to the merchant appraiser as to whether or not he and the general appraiser did not agree to apply the valuation of one case in each invoice to the entire importation of which it was a part; and also the question whether or not those goods in the several cases were all of the same character as to value.

Reappraisers may avail themselves of clerical assistance to average appraisements given by different experts, when it appears that it was for their guidance only.

Under the plaintiff's protest the question is not open that Rev. Stat. § 2900 is unconstitutional in its provisions for fixing or authorizing 20 per cent additional duty; but that question has been disposed of on its merits in *Passavant* v. *United States*, 148 U. S. 214.

If an importer is afforded such notice of a reappraisement and hearing as enables him to give his views and make his contention in respect of the value of his goods, he cannot complain, even though he be not allowed to be present throughout the proceedings on the reappraisement, or to hear and examine all the testimony, or to cross-examine the witnesses.

It appeared in this case that the merchant appraiser examined the goods sufficiently to satisfy him that they were the same order of goods that his firm imported. *Held*, that this established the familiarity required by the statute, and placed his qualifications as an expert beyond reasonable doubt.

An importer whose goods, in several packages, are sent by the collector to the public store and are there examined, cannot take advantage of the fact that the appraisers in making up their opinion did not examine every case, unless it also appears that they were directed by the collector to make such examination of all, and failed to do so.

THIS was an action seasonably brought by Arthur Origet against Edward L. Hedden, then collector of the port of New York, in the Circuit Court of the United States for the Southern District of New York, to recover an alleged excess of duty exacted by the collector upon goods imported by plaintiff on February 8, 9, 17, and 23, 1886, (the last two importations being by steamships Oregon and Chicago, respectively,) and paid under protest.

The invoice and entered value of each of the four importations were raised by the appraisers to an amount exceeding ten per cent thereof, and the collector liquidated and exacted duty upon the value so increased and the additional duty of twenty per cent thereon mentioned in section 2900 of the Revised Statutes.

Upon the two entries of the eighth and ninth of February, plaintiff did not call for any reappraisement, but protested against the assessment of duty upon any values higher than those declared on the entry, the protest stating that "said valuations are correct, and that said goods are liable to no more duty than would accrue upon said valuations, and that the additional values were not legally ascertained; that the appraiser made no proper or legal examination or appraise-

ment of said goods; that he arbitrarily added to the values upon an arbitrary and assumed basis of the cost thereof; that in so doing he acted under instructions from special agents of the Treasury and not upon his own knowledge or judgment, and we specially protest against the additional duty of 20%, claiming for the reasons aforesaid that it did not accrue and said goods are not dutiable as charged."

On the trial plaintiff's New York manager testified that he saw Brown, the assistant appraiser, regarding the appraisal of these importations, and was then asked: "State whether or not you said anything to Mr. Brown (and, if so, what) as to the production of evidence as to the value of these goods?" The question was objected to on the ground that the importer's remedy was to call for a reappraisement. The court thereupon excluded the question and plaintiff excepted. The witness then testified that he had conversed with the collector as to a reappraisal, or a call for a reappraisal, of these first two entries, and was asked what the conversation was. To this the defendant objected, because it was not claimed in the protest that any reappraisal was called for and refused. The question was excluded and plaintiff excepted.

The record thus proceeded: "Upon the two later importations, of February 17th and 23d, per the Oregon and the City of Chicago, reappraisements were called for and had. The Oregon importation consisted of four cases, and the other of three cases, all of which (both importations) were by the collector ordered to the public store, and were there at the time of the reappraisements."

The merchant appraiser was then called as a witness by plaintiff, and testified: "I did not examine one case. I merely looked over the goods. Q. You did not examine any case? A. Not specially; not to appraise it." But he explained on cross-examination that he examined the goods in one case out of each importation sufficiently to satisfy himself that the goods were of the same order as those imported by the firm of which he was a member; that the average of the different valuations of the witnesses was made up in his office by another person at his direction; "that the report of the

appraisal was based upon that computation and the witnesses' reports;" and that the general appraiser sat with the witness " in the reappraisal, in the writing up of the reappraisal."

The following question was then propounded by plaintiff's counsel : " What I ask you is, Mr. Brower being the general appraiser and sitting with you on the reappraisal, was there or not any agreement (and, if any, what?) as to the application of the valuation of one case on each invoice to the entire importation ? " This was objected to, the question excluded, and plaintiff excepted.

The witness also testified that the general appraiser in examining the goods " simply passed and looked at them to see that they were woollens — he was not competent to judge of their value — to see that they corresponded with the invoices." He further said that the general appraiser generally went with him in examining the goods, but what he did when witness was not present he did not know ; that after the computations were made, the general appraiser and himself had a joint session, in which they made up their reports.

Plaintiff's manager was asked in reference to the goods reappraised : " State whether or not those goods in the several cases were all of the same character as to value ? " The witness testified to the presence of a Treasury agent at the reappraisement, and was asked : " Did you hear any of the questions put to the witness ? " The witness was also asked if the Treasury agent did not himself put questions to him on that examination. These questions were severally objected to as immaterial and were excluded by the court, and plaintiff excepted, but only the exception to the first was argued.

When the reappraisement was about to take place, plaintiff's counsel, Mr. Clarke, was present and made application to the appraisers " to be present to examine the schedules of the different witnesses, to ask them questions, or to suggest questions to you to be asked them, and hear and know the testimony which you have or may receive," and, if this request be denied, that plaintiff and his associate in business " be present when the witnesses are examined in the case of Origet, and that one of them be allowed to see the schedules of the witnesses."

To which the general and merchant appraisers responded that they denied the application of the attorney to be present, but desired to hear the importers in regard to their reappraisements, and that they would be glad to have any suggestions that they might have to make as to asking questions of witnesses.

The record then gives the following statement by the general appraiser: " Mr. Clarke further asks that they may be permitted to examine the various affidavits made by the experts, importers, merchants, and others, and also to be present at the taking of any testimony herein, and to cross-examine all such witnesses as may be produced here on this reappraisement, or to suggest questions to the general appraiser.

" The general appraiser and the merchant appraiser say, in regard to that, they cannot permit the importers to be present during the taking of the testimony or the examination of the affidavits, but they will be glad to receive suggestions from the importers in asking any questions of any and all who may be called."

The request was then renewed so that plaintiff might " be enabled to suggest questions," and disposed of by the same ruling.

Plaintiff protested against the assessment and exaction of duties upon the values ascertained by the reappraisements upon the grounds: That the goods were " liable to no greater amount of duty than that accruing upon the invoice or entered value thereof;" that the appraiser's return " was made contrary to law and without legal or proper examination of the goods;" that plaintiff " was entitled to a reappraisement of said goods, according to law, by a general and merchant appraiser, and made due demand therefor;" that " notwithstanding said demand for reappraisement, no legal reappraisement of said merchandise was ever had;" that the so called reappraisement " was illegally conducted and was not a valid reappraisement, according to which duties might be assessed, in this, that the general appraiser, George V. Brower, did not act upon his knowledge or judgment of the goods, but permitted his judgment and return of value to be controlled and

dictated by special agents of the Treasury; that he did not personally examine and appraise the merchandise," nor did the merchant appraiser; that the general appraiser refused to allow plaintiff to be represented by counsel or allow counsel to be present to examine the schedules of the different witnesses, to ask them questions, or to suggest questions to be asked, or to hear or know the testimony received; that the appraiser refused to allow plaintiff and his associate to be present at the examination of witnesses, or to see the schedules; that the general appraiser permitted special agents of the Treasury and business rivals to attend; that after the proceedings on the first day the general appraiser called other witnesses and parties to estimate the value of the goods without giving plaintiff notice; that in arriving at the valuation returned, the appraisers took the average of the valuations of the witnesses without regard to their competency or knowledge of the goods; that "witnesses were permitted to return schedules of the value of all the goods without an examination thereof by them;" that such schedules were considered by the merchant and general appraiser; and some other particulars.

Testimony was given as to the difference between the duties upon the goods as entered and the duties exacted.

The foregoing was all the evidence adduced in the case, the defendant offering no testimony.

The case was tried before Lacombe, J., and a jury. A verdict was directed in favor of the collector, and plaintiff brought error to the judgment rendered thereon.

The following are sections of the Revised Statutes particularly referred to:

"Sec. 2901. The collector shall designate on the invoice at least one package of every invoice, and one package at least of every ten packages of merchandise, and a greater number, should he or either of the appraisers deem it necessary, imported into such port, to be opened, examined and appraised, and shall order the package so designated to the public stores for examination; and if any package be found by the appraisers to contain any article not specified in the invoice, and

they or a majority of them shall be of opinion that such article was omitted in the invoice with fraudulent intent on the part of the shipper, owner or agent, the contents of the entire package in which the article may be, shall be liable to seizure and forfeiture on conviction thereof before any court of competent jurisdiction; but if the appraisers shall be of opinion that no such fraudulent intent existed, then the value of such article shall be added to the entry, and the duties thereon paid accordingly, and the same shall be delivered to the importer, agent or consignee. Such forfeiture may, however, be remitted by the Secretary of the Treasury on the production of evidence satisfactory to him that no fraud was intended."

"SEC. 2939. The collector of the port of New York shall not, under any circumstances, direct to be sent for examination and appraisement less than one package of every invoice, and one package at least out of every ten packages of merchandise, and a greater number should he, or the appraiser, or any assistant appraiser, deem it necessary. When the Secretary of the Treasury, however, from the character and description of the merchandise, may be of the opinion that the examination of a less proportion of packages will amply protect the revenue, he may, by special regulation, direct a less number of packages to be examined."

*Mr. Edwin B. Smith* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendants in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

1. Certain rulings of the court in respect of the exclusion of evidence are complained of, but we fail to discover any error therein.

In reference to the first two importations, plaintiff's manager was asked what he said to the assistant appraiser as to the production of evidence of the value of the goods, and what

the conversation was which he had with the collector about a reappraisal or a call for a reappraisal. The objections of the district attorney were that the importer's remedy for any defect or informality was to call for a reappraisement, and that the protest was insufficient. Undoubtedly the remedy of the importer on the question of valuation simply is to call for a reappraisement, though if his contention is that a jurisdictional defect exists, he can make his protest, pointing out the defect, and stand upon it as the ground of refusal to pay the increased duty. It was. not claimed in the protest that any reappraisal was called for and refused. It does not seem to us that what plaintiff's agent said to an assistant appraiser, or conversations had subsequently to the appraisement, could be competent, and, even if this might be so, there is no explanation in the record as to what evidence plaintiff sought to elicit. No offer of proof was made, nor did the questions clearly admit of an answer favorable to plaintiff on a matter manifestly relevant to the issue. *Buckstaff* v. *Russell*, 151 U. S. 626, 636. No reason was given for the exclusion of the questions, and as it does not appear that plaintiff was. deprived of any right by that exclusion, we cannot hold that error was committed.

The court excluded a question propounded to the merchant appraiser as to whether or not he and the general appraiser did not agree to apply the valuation of one case in each invoice to the entire importation of which it was a part. This was correct. If it were obligatory to open and examine all the cases, .the evidence was immaterial, for it was conceded that all were not opened and examined. If the examination of one case in each invoice was sufficient, then the application of the valuation of that case to the entire importation of which it formed a part was proper.

The question " whether or not those goods in the several cases were all of the same character as to value," was also excluded. As the question covered both the importations, and the appraisers examined one case of each, it was immaterial. If there was a difference between the goods in the different cases of either importation, it is singular that the invoices are

not set forth in the record. The inference is a reasonable one that they showed the goods in each importation to be of the same character and value, so that the examination of one case would be sufficient for all. There is nothing to indicate the contrary.

Some objection is made because the reappraisers availed themselves of clerical assistance to average the appraisements given by the different expert witnesses who appeared before them, but the merchant appraiser testified " it was for guidance simply. The report of the appraiser, signed by the witness, was based upon that computation and the witnesses' reports." No exception seems to have been taken in reference to this matter, probably for want of legal basis.

2. Plaintiff made the point in the argument upon defendant's motion to have a verdict directed in his favor, that section 2900 of the Revised Statutes " was unconstitutional in its provisions for fixing or authorizing a twenty per cent additional duty." The court expressed the opinion that this point was not open under plaintiff's protest, and this would seem to be so, but the question has been disposed of on its merits in *Passavant* v. *United States*, 148 U. S. 214.

3. The contention that the importer has the right to be present throughout the proceedings on the reappraisement; hear or examine all the testimony; and cross-examine the witnesses, which was passed on in *Auffmordt* v. *Hedden*, 137 U. S. 310, is renewed in this case.

The importer appeared at the opening of the reappraisal and made application that he or his associate, or his counsel, might examine the various affidavits made by experts, importers, merchants and others; be present at the taking of any testimony, and cross-examine all witnesses produced, or suggest questions to the general appraiser. The appraisers ruled that they could not accede to this request, but expressed their desire to hear the importers in regard to their reappraisements, and their assurance of appreciation of any suggestions the importers might make as to asking questions of the witnesses. The presumption in favor of official action sustains this ruling as being in accordance with the rules and regula-

tions established by the Secretary of the Treasury, under section 2949 of the Revised Statutes, to secure a just, faithful and impartial appraisal of all merchandise imported into the United States, and just and proper entries of the actual market value or wholesale price thereof; and this was indeed the fact, as appears by reference to the general regulations of 1884 and instructions of June 9, 1885, given at length in *Auffmordt* v. *Hedden.*

The following quotation from the instructions of 1885 will suffice to explain the reasons for the rule: "The law provides that the merchant appraiser shall be familiar with the character and value of the goods in question, and it is presumed that the general appraiser will have or will acquire such expert knowledge of the goods he is to appraise as to enable him to intelligently perform his official duty with a due regard for the rights of all parties and independently of the testimony of interested witnesses. The functions of the reappraising board are the same as those of the original appraisers. They are themselves to appraise the goods, and not to depend for their information upon the appraisement of so-called experts in the line of goods in question. . . . Appraisers are authorized to summon witnesses, but there is no authority for the public examination of such witnesses or their cross-examination by importers or counsel employed by such importers. The appraising officers are entitled to all information obtainable concerning the foreign market value of goods under consideration, but such information is not public property. It is due to merchants and others called to give such information that their statements shall be taken in the presence of official persons only. It must often occur that persons in possession of facts which would be of value to the appraisers in determining market values are deterred from appearing or testifying by the publicity given to reappraisement proceedings."

As already stated, plaintiff in the case at bar was invited by the appraisers to present his views in regard to the reappraisement and to suggest questions to be put to the witnesses. He did not avail himself of the opportunity, but insisted on the right to remain throughout the proceedings, to be informed

as to all the evidence, and to cross-examine the witnesses as in open court. This, according to *Auffmordt* v. *Hedden*, and *Passavant* v. *United States*, could not be conceded. In those cases it was ruled that under the revenue system of the United States the question of the dutiable value of imported articles is not to be tried before the appraisers, as if it were an issue in a suit in a judicial proceeding; that such is not the intention of the statutes; that the practice has been to the contrary from the earliest history of the government, and that the provisions of the statute in this behalf are open to no constitutional objection.

As respects taxation and assessment for local improvements, such notice and hearing as are appropriate to the nature of the case and afford the opportunity to assert objections to the methods pursued or to the amount charged, are deemed sufficient for the protection of the individual. *Lent* v. *Tillson*, 140 U. S. 316, 327.

Duties imposed under tariff laws are paid in order that goods may be brought into the country, and provisions in respect of their levy and collection are framed in view of the character of the transaction. The finality of the appraisal is a condition attending the importation prescribed by the government as essential to the operation of the system, and if the importer is afforded such notice and hearing as enables him to give his views and make his contention in respect of the value of his goods, he cannot complain.

4. It is further claimed that the examination of the goods was not such as to qualify the merchant appraiser to act, that is, that he did not examine with sufficient care the cases of goods which he did examine. It is not denied that he was "a discreet and experienced merchant," but that he was "familiar with the character and value of the goods in question," as prescribed by section 2930, appears to be questioned on the ground of carelessness in investigation. His testimony-in-chief was not happily expressed; yet, on cross-examination, it clearly and distinctly appeared that he examined the goods in one case out of each importation sufficiently to satisfy him that they were the same order of goods that his firm imported. This

established the familiarity required by the statute, and placed his qualifications as an expert beyond reasonable doubt. We agree with the Circuit Court that the verdict of a jury, controlled by the theory that such an expert was not qualified for appraising the goods, could not have been sustained.

5. The stress of the argument is laid, however, upon the proposition that all the seven packages were not examined. The argument is that the collector deemed it necessary under section 2939 that all the cases should be examined, and, therefore, directed them all to be sent to the public store "for examination and appraisement;" that it thus became the imperative duty of the appraisers to examine every one of the cases; and that as they examined but one out of each invoice, or only two out of the seven, there was a want of examination fatal to the appraisement. On behalf of the government it is argued that sections 2901 and 2939 were intended for the benefit of the government and not of the importer; but although that was the primary intention, we are not inclined to deny that it might happen where the collector had given specific direction for the examination of more than one package out of ten, and the importer had relied on the direction, the omission to examine the number of packages directed might under some circumstances be availed of by him as constituting a want of the examination to which he was entitled. We can suppose a case in which the importer might truthfully contend that he did not request the more extensive examination because of the direction, and did not demand the full execution of the direction because of the rightful assumption on his part that it would be so executed, and his ignorance that it was not. The objection would be exceedingly technical where there was nothing to indicate that any injury could have ensued, as where there was no reasonable basis for the claim that one package differed in intrinsic value from another; but giving it the full force insisted on, it is clear enough that a case in which it would be applicable could not arise unless it appeared that the collector had given such direction. And in that particular this record is deficient. What the record shows is that the seven cases "were by the collector ordered to the public

store, and that they were there at the time of the reappraisements;" but it does not affirmatively show that the collector deemed it necessary that all the cases should be examined, while, as a matter of convenience, by having all sent there, (and there were but seven,) the general appraiser and the merchant appraiser could open and examine each case if either of them deemed it necessary, or if the importer desired them to do so, or informed them that the packages differed in value. The collector could have directed all the cases to be opened and examined, or either of the appraisers could have done it; but it would be going an inadmissible length to hold that the mere fact that the cases were sent to the public store necessarily amounted to a specific direction by the collector that all should be examined, and if all were not, (although the appraisers did not deem it necessary and no demand by the importer to have them all sent there for that purpose was shown,) that jurisdiction failed and the reappraisement was illegal. We are of opinion that the Circuit Court rightly directed a verdict for the defendant.

*Judgment affirmed.*