**McDOWELL v. HEINER, Collector of Internal Revenue.**

(District Court, W. D. Pennsylvania. December 4, 1925.)

No. 1088.

**I. Internal revenue ☞2—Provision for assessment and collection through administrative officers of additional tax and penalty for false and fraudulent returns within taxing powers of Congress.**

Rev. St. § 3176, as amended by Income Tax Act Oct. 3, 1913 (Comp. St. § 5899), and Revenue Acts of 1916 (Comp. St. § 5899) and 1918 (Comp. St. Ann. Supp. 1919, § 5899), providing that, in case of false and fraudulent income return, the Commissioner shall assess additional taxes and add thereto a certain per cent. of such taxes, which shall be collected in the same manner as the tax, is within the taxing power of Congress.

**2. Internal revenue ☞28—Collection of additional income tax not enjoinable.**

Injunction will not lie to enjoin collection of income tax assessed on the ground of false and fraudulent return, the individual having plain, adequate, and complete remedy at law, by paying tax and bringing action to recover it, and Rev. St. § 3224 (Comp. St. § 5947), inhibiting suit to restrain collection of any tax.

In Equity. Suit by Jesse C. McDowell against D. B. Heiner, Collector of Internal Revenue. Bill dismissed.

William G. Heiner, of Pittsburgh, Pa., for plaintiff.

Walter Lyon, U. S. Atty., and Warren H. Van Kirk, Sp. Asst. U. S. Atty., both of Pittsburgh, Pa., for the United States.

THOMSON, District Judge. This bill seeks to restrain the defendant, as collector of internal revenue, from collecting, by warrant of distraint, certain ad valorem additions to the income taxes for the years 1913 to 1919, both inclusive, amounting to $217,999.47, assessed by the Commissioner of Internal Revenue. Plaintiff's counsel having set the case down for argument "upon the matters of law raised in the defendant's answer," the case was heard on bill and answer. No exceptions to the answer were filed by plaintiff, nor any final replication, so as to bring the cause to issue. Because of this fact, under equity rule No. 66, providing for the dismissal of the suit on failure to file a replication, unless specially allowed to be filed nunc pro tunc, the defendant contends that he is entitled to an order of dismissal.

The facts of the case are these: Plaintiff filed his individual income tax returns for the years 1913 to 1919, inclusive, and paid the taxes computed by him thereon. The returns as filed for years 1913, 1914, and 1915 were found by the Commissioner of Internal Revenue to be intentionally false and fraudulent, within the meaning of section 3176 of the Revised Statutes, as reenacted by section II of the Income Tax Act of October 3, 1913 (Comp. St. § 5899), and additional taxes found to be due were assessed by the Commissioner, to which additional taxes the commissioner added "100 per centum of such taxes," under the provisions of said statute. The returns filed for the years 1916 and 1917 were, in like manner, found to be willfully false and fraudulent, within the meaning of said section 3176, as amended by section 16, part 3, title I, of the Revenue Act of September 8, 1916 (Comp. St. § 5899), and additional taxes were assessed by the Commissioner, to which

he added "100 per centum of its amount," in accordance with the provisions of said statute. · The returns filed for the years 1918 and 1919 were likewise found to be willfully false and fraudulent under the aforesaid Revised Statutes, as amended by section 1317 of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 5899), and additional taxes were assessed by the Commissioner, to which he added "50 per centum of its amount," pursuant to the provision of the statute.

The assessments were made in March, 1924, and afterwards, on March 22d, the Commissioner made demand upon the plaintiff for the payment of the taxes and penalties assessed, notifying the plaintiff that, if the same were not paid within 10 days after date of demand, a penalty of 5 per centum of the amount of the additional taxes and penalties would be added, with interest on the same at the rate of 1 per centum per month from March 22, 1924, until paid. Plaintiff having failed to comply with the demand, defendant issued a second demand for payment not later than April 11, 1924, with 5 per centum penalty, and interest at the rate of 1 per centum a month from March 22, 1924, informing the plaintiff that, unless such taxes and penalties were paid as demanded, a warrant of distraint would be issued, and his property seized and sold to satisfy the assessments. Plaintiff failing to comply with such demand, defendant issued a warrant of distraint, under which certain properties of the plaintiff, of less value than the amount of the taxes without the penalties, were seized and levied upon, and the sale of said property is threatened to satisfy such demand.

Plaintiff has not paid either the taxes or penalties assessed, but on March 31, 1924, filed with the defendant a claim for the abatement of said taxes and penalties. On June 6, 1924, plaintiff's attorney filed with the Bureau of Internal Revenue a brief in support of said claim for abatement, and on June 16, 1924, was granted a hearing by the Commissioner of ·Internal Revenue in connection with the said claim for abatement. On April 12, 1924, this suit was brought to enjoin the defendant from seizing, levying upon, or selling the real or personal property of the plaintiff to satisfy said penalties; no other purpose being stated in the bill than to enjoin the collection of the "penalties" or additional taxes. For the purpose of this case plaintiff admits that the above-mentioned returns were false and fraudulent.

Against the right of the government to enforce collection, and the right of the plaintiff to injunctive relief, the plaintiff avers:

First. That the assessment of the additional taxes for the years 1913 to 1917, inclusive, otherwise barred by the statute, was made by charging plaintiff with filing false and fraudulent returns with intent to evade the tax, which constitutes a crime.

Second. That inasmuch as the assessment of the additional taxes is predicated upon the charge of crime, and the penalties are predicated upon the additional taxes, it follows that the ad valorem penalties are assessed as punishment for crime.

Third. The plaintiff is about to be punished and penalized for a crime of which he has never been indicted and convicted by a jury, and is therefore deprived of his constitutional rights.

Fourth. That the federal court has jurisdiction to restrain the collection of a penalty for an alleged crime prior to indictment and conviction, because to restrain the collection of a penalty is not to restrain the collection of a tax.

Fifth. That Congress is without power to deprive plaintiff of his right to trial by jury for an alleged crime by prohibiting suits instituted to restrain collection of taxes.

Preliminary to a consideration of the legal questions, it would seem entirely anomalous that a party to an action could have his suit improved, or his cause in any manner strengthened, by alleging or conceding that the act in question charged against him constitutes a crime. Conspicuously would this appear to be true, when the plaintiff seeks relief in a court of equity from the consequences of his crime.

[1] The purpose of Congress is beyond doubt. The language of the statutes under which the assessments were made plainly shows that the additions to the tax are intended to be assessed by the Commissioner, and to be collected by the collector, in the same manner in which taxes are assessed and collected; that is, by assessment and distraint. The acts specifically provide that, in case of any return of a false or fraudulent list, the Commissioner shall add 100 per centum to such tax, and that "the amount so added to the tax shall be collected at the same time and in the same manner" as the tax, unless the neglect or falsity is discovered after the tax has been paid, "in which case the amount so added shall be collected in the same manner as the tax."

A like provision, except as to the amount of the addition, is found in the other acts referred to. No argument is necessary to demonstrate that Congress has conferred power on the Commissioner to assess such ad valorem additions to the tax, and upon the collector to collect them by warrant of distraint. The statutes are plain and unambiguous, not only authorizing, but requiring, the Commissioner to make such additions to the tax, when he finds the return to be false and fraudulent, and requiring also the collector to collect such additions in the same manner as the tax itself is collected. Having specifically granted this authority, in doing so, did Congress exceed its constitutional power? Did it thereby deprive the citizen of any right guaranteed by the Constitution?

Congress has the broadest powers under the Constitution to lay and collect taxes. It cannot tax exports, and must impose direct taxes by the rule of apportionment, and indirect taxes by the rule of uniformity. Limited in this way only, it reaches every subject, and may be exercised at discretion. Under the provisions of the Constitution and within the limits of that instrument, in the field of taxation Congress is absolutely supreme, as no power of control has been lodged in any other department of the government. It may prescribe the basis, fix rates, and require payment as it may deem proper. Pacific Mutual Insurance Co. v. Soule, 7 Wall. 433, 19 L. Ed. 95.

Accompanying the power given to Congress to levy and collect taxes is the power to enact any laws necessary and proper for the execution of such power. Clearly within such limitations are all laws authorizing administrative officers to assess and collect such taxes, with the power to enforce prompt payment, whether the taxpayer be willfully delinquent or careless and indifferent. For indifference and neglect, minor penalties naturally are prescribed; for willful fraud, with intent to evade payment, more rigorous penalties are imposed. Willful fraud, with intent to evade payment, has been made a misdemeanor with appropriate punishment. But this does not limit the power of Congress to punish the delinquent taxpayer by increasing the amount of the tax by ad valorem additions.

The results which follow in the two cases are wholly distinct and different in their purpose; the one is a criminal action instituted by the sovereign power for the punishment of crime, after indictment, trial, and conviction. The other is to enforce the collection of the taxes imposed. As stated by Justice Grier in Dorsheimer v. U. S., 7 Wall. 166, 19 L. Ed. 187:

"The purpose of penalties inflicted upon persons who attempt to defraud the revenue is to enforce the collection of duties and taxes. They act in terrorem upon parties whose conscientious scruples are not sufficient to balance their hopes of profit."

It is one thing to charge a party with a crime. It is a wholly different thing to charge the existence of facts as the basis for the enforcement of a penalty by civil suit, or by the action of administrative officers, although such facts may constitute a crime.

In Bartlett v. Kane, 16 How. 263, 14 L. Ed. 931, a collector of customs imposed an extra 20 per cent. duty upon the Tariff Act of 1842 (5 Stat. 548) on goods imported, as a penalty for undervaluation. Payment was made under protest, and suit brought to recover back. The Supreme Court held the 20 per centum to be additional duty designed to operate as a restraint upon fraud and injustice.

The same question was before the Supreme Court, under a like provision of the McKinley Tariff Act (26 Stat. 567), in the case of Passavant v. United States, 148 U. S. 214, 13 S. Ct. 572, 37 L. Ed. 426. The court said that the additional duties were "designed to discourage undervaluation upon imported merchandise and to prevent efforts to escape the legal rates of duty. It is wholly immaterial whether they are called additional duties or penalties. Congress had the power to impose them under either designation or character. * * *" This case was cited with approval in Origet v. Hedden, 155 U. S. 228, 15 S. Ct. 92, 39 L. Ed. 130.

The question of the right and power of Congress to commit to administrative officers the right to impose and collect money penalties came squarely before the Supreme Court in Oceanic Steam Navigation Co., Ltd., v. Stranahan, 214 U. S. 320, 29 S. Ct. 671, 53 L. Ed. 1013. There the money penalty was imposed by the Secretary of Commerce under the ninth section of the Alien Immigration Act of 1903 (32 Stat. 1215), for bringing into the United States an alien afflicted with a loathsome or contagious disease. Against the constitutionality of the act it was urged:

First. That the act in question violates the Constitution, because it defines a criminal offense and authorizes an administrative officer to determine whether the crime

has been committed, and, if so, to inflict punishment.

Second. That, even if it be conceded that Congress may in some cases impose penalties for violation of a statutory duty, and prevent enforcement by civil suit instead of criminal prosecution, it does not follow that a penalty may be authorized and its collection committed to an administrative officer, without the necessity of resorting to judicial power. That all cases of penalty or punishment enforcement must depend upon the exertion of judicial power, either by civil or criminal process.

Third. That the fine imposed by the act was repugnant to the Fifth Amendment, amounting to the taking of property without due process of law; the fines in some cases being imposed without previous notice, and in all cases without adequate notice or opportunity to defend.

All these objections were overruled and the act declared to be constitutional. The court held that over the exclusion of aliens Congress had exclusive control, with power to impose appropriate obligations and sanction their enforcement by reasonable money penalties, giving executive officers the power to enforce such penalties without invoking the judicial power.

The court further held that, in a matter wholly within its jurisdiction, the constitutional right of Congress to enact legislation in regard thereto is the sole measure by which the courts must determine the validity of such legislation; that the imposition of a penalty by an executive officer, when authorized by Congress in a field wholly within its competency, such as alien immigration, internal revenue, taxation, and other subjects, does not violate the Fifth Amendment, or any constitutional provision. On the immediate question of money penalties, the court said:

"In accord with this settled judicial construction the legislation of Congress from the beginning, not only as to tariff, but as to internal revenue, taxation, and other subjects, has proceeded on the conception that it was within the competency of Congress, when legislating as to matters exclusively within its control, to impose appropriate obligations, and sanction their enforcement by reasonable money penalties, giving to executive officers the power to enforce such penalties without the necessity of invoking the judicial power."

The Constitution does not guarantee trial by jury for the imposition of penalties for the nonpayment of taxes. None of the constitutional provisions relative to the right of trial by jury have any application here, as the plaintiff is not being tried for a crime. Money penalties may be sued for and recovered in civil actions, and criminal prosecution is not necessary. Hepner v. United States, 213 U. S. 113, 29 S. Ct. 474, 53 L. Ed. 720, 27 L. R. A. (N. S.) 739, 16 Ann. Cas. 960.

When the statute makes certain acts a misdemeanor, and also provides for recovery of a penalty by civil suit, either remedy may be pursued, and the rules that apply depend upon the nature of the action taken. United States v. Stevenson, 215 U. S. 190, 30 S. Ct. 35, 54 L. Ed. 153. In deciding that a civil suit would lie by the government, even if the facts constituted a crime, the Supreme Court, in United States v. Regan, 232 U. S. 37, 34 S. Ct. 213, 58 L. Ed. 494, said:

"While the defendant was entitled to have the issues tried before a jury, this right did not arise from article 3 of the Constitution or from the Sixth Amendment, for both relate to prosecutions which are strictly criminal in their nature, * * * but it did arise out of the fact that in a civil action of debt involving more than $20 a jury trial is demandable"—citing cases. Many other cases of like principle might be cited.

The cases of Lipke v. Lederer, 259 U. S. 557, 42 S. Ct. 549, 66 L. Ed. 1061, and Regal Drug Corporation v. Wardell, 260 U. S. 386, 43 S. Ct. 152, 67 L. Ed. 318, are not controlling or applicable here. In those cases the court was dealing with a statute, (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) to prevent the manufacture and sale of intoxicating liquors for beverage purposes, with 39 sections, for the violation of any of which appropriate penalties and punishments are provided. It is in no sense a taxing act. In the first-named case the court said: The "revenue officer, without notice, has undertaken to assess a penalty for an alleged criminal act and threatens to enforce payment by seizure and sale of property without opportunity for a hearing of any kind."

Referring to the use of the word "tax" in title 2, section 35 (Comp. St. Ann. Supp. 1923, § 10138½v), the court held that evidence of crime is essential to assessment under that section; that it lacks all the ordinary characteristics of a tax, whose primary function is to provide for the support of the government, and clearly involves the idea of punishment for infraction of the law, the definite function of a penalty; that these

decisions are not applicable to the case before us seems clearly apparent.

[2] In conclusion: In the legislation under which the penalties in question were imposed, and collection authorized by administrative officers, Congress was acting on a subject exclusively within its control. Appeal to the judicial power is neither warranted nor necessary. The taxpayer had notice and an opportunity to be heard. If the claim against him is illegal, and his right is denied, it is his duty to pay, and, in his action to recover back, every legal defense is open to him, including the right to question the constitutionality of the act under which the assessments were made. He has thus a plain, adequate, and complete remedy at law. In addition to this, and the fact that he does not come into a court of equity with clean hands, he is squarely confronted by section 3224 of the Revised Statutes (Comp. St. § 5947), which prohibits relief by injunction.

The bill must therefore be dismissed.