FIDELITY & DEPOSIT CO. OF MARYLAND
et al. v. LINDHOLM.
No. 6901.

Circuit Court of Appeals, Ninth Circuit.
June 12, 1933.

Rehearing Denied July 24, 1933.

Clarence B. Runkle and Joe Crider, Jr., both of Los Angeles, Cal., for appellant Fidelity & Deposit Co. of Maryland.

William A. Monten, of Los Angeles, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

SAWTELLE, Circuit Judge.

Albert L. Lindholm, deceased, was, at the time this action was commenced, the administrator of the estate of Peter L. Lindholm, deceased. Peter L. Lindholm, deceased, was the father of said administrator and of appellee, Emil G. Lindholm. His estate was probated in the Superior Court of the state of California for the county of Los Angeles. The decree of distribution of said estate, dated March 2, 1927, ordered that the cash belonging thereto, in the amount of $18,230.09, "be distributed to Emil G. Lindholm, son of decedent." Emil G. Lindholm's distributive share of his father's estate remaining unpaid, on August 27, 1930, he commenced this action in the court below against his brother, Albert L. Lindholm, the administrator, and joined as defendant the appellant surety company, surety on the administrator's bond. Defendants' demurrers to the complaint, on the ground that the action was barred by the three-year period of limitations contained in section 338 of the Code of Civil Procedure of California, were overruled.

The defenses interposed by the answer of the surety company were, first, the bar of the statute of limitations, and, second, that a fraud had been committed upon the surety by reason of a false account having been filed in the probate proceeding by the administrator of Peter L. Lindholm's estate, with the knowledge and consent of plaintiff-appellee, for the purpose of concealing from the probate court "the fact of the numerous transactions and dealings which plaintiff and defendant Albert L. Lindholm had conducted with said estate proper and for the pur-

pose of facilitating the approval by said probate court of said account and for the purpose of avoiding the necessity of a full disclosure to said probate court of the many and devious transactions and dealings with said estate property which had been carried on by plaintiff and the said defendant Albert L. Lindholm, jointly and in concert."

The case came on for trial before a jury. Appellee made out a prima facie case by showing that the amounts provided for in the decree of distribution were unpaid. Evidence was introduced which proved counterclaims in favor of the administrator amounting to $583.37. The surety sought to introduce evidence relating to payments made by the administrator to the appellee prior to the date of the decree of distribution. The court sustained an objection to this evidence under circumstances hereinafter set forth. The court instructed the jury to bring in a verdict for appellee in the sum of $17,646.72, representing the amount provided for in the decree of distribution, less the amount of the administrator's counterclaims, with interest from the date of the decree, total $22,762.58.

November 14, 1927, prior to the commencement of this action, appellee instituted a suit in equity in the court below against the administrator and appellant, his surety, for the purpose of vacating the decree of distribution, claiming that a further accounting would show a balance due from the administrator of $115,000 instead of the amount provided in the decree of distribution. The decree in that suit was in favor of the defendants, on the ground that the decree of distribution had become final and was not open to attack, there being no showing of extrinsic fraud.

Albert L. Lindholm, the administrator of the estate of Peter L. Lindholm, deceased, died pending this appeal, and, on motion of the administrator of the former, the appeal of Albert L. Lindholm to this court has been dismissed.

The surety contends in its brief that the court erred in overruling its defense of the statute of limitations, and in excluding evidence of transactions antedating the decree of distribution and relating to the alleged falsity of the final account filed by the administrator in the probate proceeding.

Appellant has raised the statute of limitations by demurrer and by answer. The administrator's bond was given pursuant to sections 1388 and 1390 of the California Code of Civil Procedure (now section 541, Probate Code). The former section provided as fol-

lows: "Every person to whom letters testamentary or of administration are directed to issue, must, before receiving them, execute a bond to the State of California, with two or more sufficient sureties, to be approved by the superior court, or a judge thereof. In form the bond must be joint and several, and the penalty must not be less than twice the value of the personal property, and twice the probable value of the annual rents, issues and profits of real property belonging to the estate, which values must be ascertained by the superior court, or a judge thereof, by examining on oath the party applying, and any other persons."

And section 1390 provided that: "The bond must be conditioned that the executor or administrator shall faithfully execute the duties of the trust according to law."

Appellant contends that, inasmuch as the statute requires the giving of the bond and prescribes the terms and conditions thereof, it follows that the bond is a statutory bond and that any liability created thereunder is a liability created by statute within the meaning of section 338 of the California Code of Civil Procedure, which provides that "an action upon a liability created by statute, other than a penalty or forfeiture," must be commenced within three years.

Appellee, on the other hand, contends that the action is not one on a liability created by statute, but is "one to recover from the surety a sum of money distributed to appellee in the probate action," and hence the three-year limitation above set forth is not applicable, but the applicable statute is section 336 of the Code of Civil Procedure, which prescribes a period of five years for the commencement of actions "upon a judgment or decree of any court."

Section 1666 of the Code of Civil Procedure (now section 1021 of the Probate Code) provided as follows: "In the order or decree, the court must name the persons and the proportions or parts to which each shall be entitled, and such persons may demand, sue for, and recover their respective shares from the executor or administrator, or any person having the same in possession. Such order or decree is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal."

It is frankly stated by appellant that "there is no provision in the statutory law of California dealing specifically with the statutory period for the institution of an action to enforce distribution of an estate. Our research has failed to disclose any Califor-

nia case which deals with this question. There are numerous authorities from other jurisdictions but they, of necessity, cannot answer our question directly because the period of limitation for the commencement of an action is provided solely by statute and we must be controlled here by the statutes of California."

Again, "There are cases, however, dealing with bonds of public officers, which are exactly analogous in principle and which show that the three-year period is applicable to the case at bar," citing, among others, the following: County of Sonoma v. Hall, 132 Cal. 589, 62 P. 257, 312, 65 P. 12, 459; Norton v. Title Guaranty & Surety Co., 176 Cal. 212, 168 P. 16; Peterson v. Title Guaranty & Surety Co., 35 Cal. App. 103, 169 P. 239; Hellwig v. Title Guaranty & Surety Co., 39 Cal. App. 422, 179 P. 222.

We have carefully examined all of these cases and are of opinion that they are not applicable here.

"A liability created by statute" is "a liability which would not exist but for the statute." Hocking Valley R. Co. v. New York Coal Co. (C. C. A. 6) 217 F. 727, 730.

In the case of County of Sonoma v. Hall, supra, chiefly relied upon by appellant, it appears that Hall was county recorder of Sonoma county, Cal. That office was created by statute and the recorder's duties were prescribed and regulated solely by the statute.

A similar situation prevails in the other cases relied upon, dealing with bonds of public officers.

The office of administrator was not unknown to the common law. Cooley's Blackstone (4th Ed.) Vol. 1, Book 2, p. 504. And under the common law it was made the duty of the ordinary appointing the administrator to require the administrator to "enter into a bond with sureties faithfully to execute his trust." Id., p. 508. And by the statute 22 and 23 Car. II, c. 10, it was provided that, after the expiration of one year from the death of the intestate, the estate should be distributed in the manner therein provided. Id., p. 516.

See, also, Schouler on Wills (5th Ed.) p. 1080, § 1139, reading as follows: "The practice of taking bonds from administrators, as distinguished from executors, must have prevailed in the English spiritual courts long before the first English colony was planted in America. For the statute 21 Hen. VII, c. 5, sec. 3, directs the ordinary to take surety on granting administration. Before the

transfer of this spiritual jurisdiction to the new courts of probate in England, statute 22 & 23 Car. II, c. 10, served from 1671, and for nearly two centuries, to fully detail what should be the form and condition of this administration bond; the ordinary being directed to take 'sufficient bonds with two or more able sureties, respect being had to the value of the estate, in the name of the ordinary.' The condition herein imposed upon the administrator was, to return a true inventory to the court at or before a specified date; to administer the estate well and truly; to make a true and just account of his administration; to deliver and pay the residue as the judge should appoint; and to render up the letters in court, should a will afterwards be presented."

Section 5 of the Civil Code of California provides that: "The provisions of this code, so far as they are substantially the same as existing statutes or the common law, must be construed as continuations thereof, and not as new enactments."

On April 13, 1850, the Legislature of California passed an act providing that "the common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States or the Constitution or laws of the State of California, shall be the rule of decision in all the courts of this state." Statutes of California, 1850, p. 219.

■ The administrator is sometimes referred to as a trustee of defined and limited powers. His relation to the court, as well as to the distributee, is of a fiduciary character, and while he "is in one sense an officer of the Court" (Ex parte Smith, 53 Cal. 204), he is not a state or public officer in the usual sense. This fiduciary relation to the distributee continues until the final settlement of his administration account. The statute of limitations begins to run in favor of the surety from the date of the final decree of distribution, the date when the cause of action in favor of the distributees against the administrator accrues, and may be invoked as a bar against them in an action on the administrator's bond.

■ The administrator's duty to account is a common-law obligation independently of statute. The above-quoted statutes, if not altogether procedural, in so far as they relate to the duty of the administrator to faithfully account, and the liability of the sureties, create no new rights or obligations.

■ Our conclusion is that the administrator's obligation is not one created by statute, but one which flows from the decree of distribution, and that the action is not barred by the three-year statute.

■ We turn next to the appellant's contention that the court erred in excluding the evidence of transactions antedating the decree of distribution and relating to the alleged falsity of the final account filed by the administrator in the probate proceeding.

Examining the record on this point, we find that the following occurred:

On cross-examination, the appellee was asked the following question:

"Mr. Runkle. Mr. Lindholm, you have testified that you received $200.00 since March 2, 1927? A. Yes, sir.

"Q. Did you receive any other amounts prior to that time?

"Mr. Monten. Just a moment. Objected to as not proper cross-examination, nor within the purview of the direct examination of this witness. Also for the further reason if the court should be of the opinion that it is proper examination, that it seeks to ascertain facts which would be in defense of their claim, as to which I will object to the introduction of any evidence, on the ground that none of their defenses, as a matter of law, are defenses.

"The Court. I suppose that refers to property of the estate?

"Mr. Runkle. Yes, your honor.

"The Court. My present view is to sustain the objection, if it is necessary to make a ruling at this time, and I presume it is, the ruling must be to sustain the objection on the ground that matters of that kind are foreclosed by the decree; in other words, in my view of it the decree of distribution is a final judgment as to the amount he is then entitled to receive from the estate. Precisely the same matters, I presume, were presented heretofore before Judge James in the other case."

The court thereupon sustained the objection, and an exception was noted by counsel for both defendants.

The defendants then called Emil G. Lindholm, plaintiff, under section 2055 of the California Code of Civil Procedure:

"Mr. Runkle. Mr. Lindholm, you have heretofore testified that you received $200.- 00? A. Yes, sir.

"Q. Did you receive any other sums than the $200? A. No, sir.

"Mr. Monten. Just a moment, please. Will you fix the date?

"Mr. Runkle. I am referring now to any time prior to March 2, 1927, the date of the final decree.

"Mr. Monten. Then I object to the question, your honor, on the ground that it goes into matters prior to date of the decree.

"The Court. You deem it an effort to impeach the judgment entered in the probate court?

"Mr. Monten. Yes, your honor.

"The Court. The evidence refers to property of the estate, no doubt. ·

"Mr. Runkle. Yes, your honor.

"The Court. The objection will be sustained."

From the foregoing, it will be seen that the question as to whether the appellee had received any sums prior to the date of the decree was answered by the appellee, in the negative. Though an objection to the question was sustained, the answer was not stricken from the record, and it still stands.

Assuming, without deciding, that the court erred in sustaining the appellee's objection to the question, we cannot find that the appellant was prejudiced by the ruling, for, in fact, the appellee answered the question. Since the appellant itself asked the question, it cannot, of course, complain that the answer was unfavorable to its theory of the case and, so far as the record discloses, shut the door to further inquiry, quite apart from the adverse ruling of the court. In any event, the appellant made no effort to follow up the question thus answered, by asking other questions tending to establish payments to the appellee prior to the date of the decree of distribution. Nor did the appellant make any proffer of proof. In the absence of a question so framed as clearly to admit of an answer favorable to the appellant's defense, a proffer of proof is necessary.

The assignment on the ruling in question is as follows: "The court erred in rejecting evidence offered by defendant, Fidelity and Deposit Company of Maryland, a corporation, to show that defendant Albert L. Lindholm had made certain payments in cash to plaintiff prior to the date of the decree of distribution in the estate of Peter L. Lindholm, deceased, which cash payments were not disclosed or contained in the accounting presented by said defendant Albert L. Lindholm to the California probate court in said estate upon which accounting said decree of distribution was rendered."

It will be noted that the foregoing assignment does not set forth the excluded evidence with the particularity required by rule 11 of this court, which is in part as follows: "When the error alleged is to the admission or to the rejection of evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected."

See, also, O'Brien's Manual of Federal Appellate Procedure, page 109, and Supplement thereto, page 44.

Indeed, under the record as it now stands, it would have been impossible for the appellant to quote the "rejected" evidence, for there was as a matter of fact no evidence offered or rejected. The only question asked, as we have seen, was answered and remains in the record; and there was neither another question nor a proffer of proof.

The rule in point, with its qualification, has been repeatedly stated by the Supreme Court. In the leading case of Buckstaff v. Russell & Co., 151 U. S. 626, 636, 637, 14 S. Ct. 448, 451, 38 L. Ed. 292, Mr. Justice Harlan said:

"The requirement that an assignment of error based upon the admission or rejection of evidence must, in the case of a deposition excluded in whole or in part, state the full substance of the evidence so admitted or rejected, means that the record must show, in appropriate form, the nature of such evidence, in order that this court may determine whether or not error has been committed to the prejudice of the party bringing the case here for review.

"But this rule does not apply where the witness testifies in person, and *where the question propounded to him is not only proper in form, but is so framed as to clearly admit of an answer favorable to the claim or defense of the party producing him.* * * * If the question is in proper form, and clearly admits of an answer relevant to the issues and favorable to the party on whose side the witness is called, it will be error to exclude it. Of course, the court, in its discretion, or on motion, may require the party in whose behalf the question is put to state the facts proposed to be proved by the answer. But, if that be not done, the rejection of the answer will be deemed error or not, according as the question, upon its face, if proper in form, may or may not clearly admit of an answer favorable to the party in whose behalf it is propounded." (Italics our own.)

From the foregoing excerpt may be seen the insistence that the Supreme Court has

placed upon there being at least a *proper question* in the record. In the instant case there was neither a question nor a proffer; hence the assignment of error now under discussion has no basis in the record.

In Missouri State Life Ins. Co. v. Young, 38 F.(2d) 399, 402, this court said, citing Buckstaff v. Russell & Co., supra: "We think the question sufficiently indicates the favorable answer expected within the rule applicable to trials where the witness testifies in person before the court."

See, also, Origet v. Hedden, 155 U. S. 228, 235, 15 S. Ct. 92, 39 L. Ed. 130; Whitney v. Fox, 166 U. S. 637, 645, 17 S. Ct. 713, 41 L. Ed. 1145. Both of these cases cite Buckstaff v. Russell & Co., supra, with approval.

In the recent case of Seaboard Air Line Ry. Co. v. Watson, 287 U. S. 86, 91, 53 S. Ct. 32, 34, 77 L. Ed. 180, the court said: "It is essential to a proper presentation of points relied on for reversal that the statute and rules of court requiring and governing the forms of assignments of errors be complied with. Every appeal must be accompanied by an assignment of errors which shall 'set out separately and particularly each error asserted.' R. S. § 997, 28 U. S. C. § 862 (28 USCA § 862); Supreme Court Rule 9 (28 USCA § 354). The purpose is to enable the court as well as opposing counsel, readily to perceive what points are relied on. The substitution of vague and general statement for the prescribed particularity sets the rule at naught. [Cases cited.] And, as the rule makes for convenience and certainty in the consideration of cases, the court may, and generally it will, disregard a specification that is so uncertain or otherwise deficient as not substantially to comply with the rule, even if the opposing party raises no question and treats it as adequate."

As was said in the case of Mercantile Trust Co. v. Hensey, 205 U. S. 298, 306, 27 S. Ct. 535, 538, 51 L. Ed. 811, 10 Ann. Cas. 572: "It is part of the duty of a plaintiff in error affirmatively to show that error was committed. It is not to be presumed, and will not be inferred from a doubtful statement in the record."

In addition to the effect of the decree of distribution and to the question of whether or not it was susceptible to an attack for fraud, we believe that the parties are bound by the judgment and proceedings in the equity suit referred to above. It will be remembered that in that suit Emil Lindholm sued the administrator for $115,000, and prayed that the latter be required to account for that sum. In reply to that prayer the appellants pleaded the decree of distribution, and urged upon the court that it was conclusive between the parties. The court sustained this contention, and held that Emil Lindholm, the plaintiff in that action, was not entitled to prove that the administrator received the larger amount claimed. The administrator and the surety having thus pleaded the judgment as a bar to the plaintiff's claim for a greater amount than that shown by the judgment, they cannot now be heard to say that the judgment upon which they relied in the equity suit was void because it was procured by fraud. If there was any fraud, the appellant surety company waived it by pleading the judgment as a bar, if it knew of the fraud at the time; and there is no allegation in its answer and no suggestion in the course of the trial that the fraud was discovered after the successful interposition of the decree of distribution in the equity suit.

Judgment affirmed.

WILBUR, Circuit Judge (concurring).

In addition to the grounds stated in the main opinion for sustaining the ruling of the trial court on the objection to the question as to payments, I wish to add that evidence of payments made before the decree of distribution was not admissible, because, as we hold, the parties hereto are estopped by the decree of distribution to question the amount therein distributed to appellee.