### KÜTZSCHBACH v. WILLIAMSON COUNTY.

No. 8692.

Court of Civil Appeals of Texas. Austin.
June 22, 1938.

Rehearing Denied July 20, 1938.

E. M. Grimes, of Taylor, for appellant.
W. K. McClain and W. H. Nunn, both of Georgetown, for appellee.

BAUGH, Justice.

Williamson County sued appellant for $936.25, claimed to be the balance due it for the use of its teams, tools, and road machinery in doing terracing work on ap-

pellant's farm, at his request, and upon an agreed schedule of charges which it was alleged that appellant agreed and contracted to pay. It was alleged that the total amount of such charges was $1966.25 upon which appellant had paid under said agreement the sum of $1030, but had refused to pay the balance. The appellant defended on the ground, among others, that the County, when it undertook to do said work, agreed to do it in a first-class and workmanlike manner; that it breached its contract in that respect; that the work was done in a defective and improper manner; and that as a result thereof when rains came the terraces overflowed and damaged appellant's farm in a greater amount than such balance claimed to be due the County and that, therefore, he owed the County nothing. The case was tried to a jury, but at the close of the evidence the trial court refused to submit special issues requested by appellant, embodying his defenses, instructed the jury to find for the County and rendered judgment accordingly; hence this appeal.

█ The work in question was authorized by, and undertaken by the County under, the provisions of Acts 1931, 42nd Legislature, p. 81, Ch. 53 (Vernon's Ann. Civ.Stats. Art. 2372c). That Act authorized such work to be done by counties with road machinery, on a co-operative basis with the landowners in the interest of soil conservation, but not "until requested to do so in writing by such owner." Pursuant to this Act the Commissioners Court of Williamson County entered an order authorizing such work to be done "after request in writing by the owner of the land." In the instant case no written request was made and no written contract entered into. The agreement involved was oral and between the landowner and one of the Commissioners. Since, however, the Commissioners Court subsequently ratified it in directing, as a court, that this suit be brought thereon, we conclude that the contract was valid, being one that the County was authorized by law to make. Galveston County v. Gresham, Tex.Civ.App., 220 S.W. 560; Williams v. Pure Oil Co., 124 Tex. 341, 78 S.W.2d 929.

█ The first contention made by appellant is that the petition sought recovery only for "terracing work"; that many of the items of work going to make up the account were for ditching and drainage separate from the terraces constructed, and did not constitute "terracing work"; and that such items were not, therefore, recoverable under plaintiff's pleadings. While we think all of the work done was a part of the original undertaking contemplated and agreed upon by the parties, that is, the prevention of erosion and for soil conservation; even if the allegations of the petition be considered as restrictive in that respect, such defect, if any there be, was cured by the answer of the appellant wherein he alleged, in setting up an affirmative defense, that said contract with the County included, as a part of the undertaking, not only the construction of terraces, but also certain excavation, back-fill work, and the construction of laterals in connection with same. The insufficiency of the petition, if it be strictly construed, consequently becomes unimportant. American Nat. Bank v. Haggerton, Tex.Civ.App., 250 S.W. 279.

█ The appellant did not testify upon the trial. It appears to be uncontroverted, however, that the work in question was a co-operative enterprise between the landowner on the one hand, and the Federal Government on the other, as a part of its soil conservation program, in which the County furnished, at an agreed charge, its men, teams, and road building equipment to enable the owner to meet the Federal Government's requirements and secure the benefits of the Federal Government's contribution to such projects. It is clear, we think, that the County did not itself undertake to lay out and construct as a county project an efficient and completed terracing project on appellant's land. The entire system was laid out by the planning engineer in charge of the CCC Camp then located at Taylor, in said county, who supervised said work, furnished the plans and specifications on behalf of the Federal Government, directed the method of its performance, and determined when the work done by the owner met the Federal requirements. The work done by the County was to be paid for by the landowner entirely on a day and hour basis, and the landowner could have stopped the work the County was doing for him at any time. Nor did the County have the right to say when the job was completed, or whether it had met the requirements of the Federal Government. That was a matter to be determined by the Federal engineer in charge. It seems that when the terraces had been built so as to meet the requirements of the Federal Government (and this was a duty

**932**

required of the landowner), then the Federal Government through the agency of the CCC Camp, constructed concrete spillways and drains over and at the ends of such terraces. Who paid for these is not shown, but it is fair to assume that same were built at the expense of the Federal Government as a part of its contribution to the soil conservation program. Some 40 to 45 such concrete spillways were shown to have been built on appellant's farm. It was the duty of the landowner to first construct the terraces according to Federal Government specifications. This he could have done himself, or through contract with private parties. He chose, however, to take advantage of the authorized use of county equipment, teams, etc., on an agreed price schedule, because it was much less expensive to him to get such work done in that manner. Manifestly the County did not contract for, nor undertake to build, a completed terracing system for appellant. It merely undertook to perform services for appellant under the direction and supervision of the Federal engineer, whose function and duty it was to determine on behalf of the landowner and the Federal Government when the Federal Government's requirements had been met, entitling the landowners to receive the Government's contribution towards the completion of the conservation project.

No authorities have been cited to us, nor have we found any, on the question here presented. The situation presented, however, is, we think, analogous to that of a supervising architect or engineer under a public works contract. While the contract declared upon in this suit was oral, and is not shown to have been referable to the powers of the supervising engineer of the CCC Camp, when viewed in its general aspect and in relation to the general undertaking involved, the inference to be drawn, in our opinion, is that when the landowner undertook this co-operative enterprise in which the Federal Government was to make a substantial contribution towards its completion; and same was to be done under the supervision and direction of such Federal engineer, he thereupon made such engineer his agent to determine when the Government requirements had been met. Consequently, in the absence of any fraud, collusion, or misconduct on the part of such engineer (none of which was alleged) his determination of whether the work done by the County on behalf of appellant had met those requirements and was acceptable to the Federal Government, would be binding upon appellant. See 7 Tex.Jur. § 29, p. 575; 4 Tex.Jur. § 4, p. 709; 12 Am.Jur. § 342, p. 898; 9 Am.Jur. § 33, p. 23.

No objection to the work done by the County was shown to have been made by appellant; no request by him that anything further be done with the county machinery, teams, etc. When the engineer of the Federal Government accepted the work done in constructing the terraces, and the concrete drains and spillways were thereafter built by the CCC Camp force, we are of the opinion that appellant could not, after said project was completed, be heard to assert that the County had not properly done the work he had requested it to do for him. That being true the County was entitled to recover for the work done.

The judgment of the trial court will therefore be affirmed.

Affirmed.