### BLACK v. ACERS et al.
### No. 13442.

Court of Civil Appeals of Texas. Dallas.

Nov. 26, 1943.

Rehearing Denied Jan. 21, 1944.

YOUNG, Justice.

Appellant's suit against defendant contractors was based upon an alleged failure to build a house according to plans and specifications; and the jury answers were favorable to plaintiff, fixing damages in the sum of $1,500. Thereafter, defendants' motion non obstante veredicto was heard and sustained, followed by judgment that plaintiff take nothing, and this appeal. Jury findings were, in effect, that A. E. Acers had failed to construct the dwelling and improvements at 3453 Amherst Street in substantial compliance with plans and specifications, and to meet Federal Housing Administration requirements, in that foundation, driveway and approach thereto were not constructed according to specifications and not properly reinforced; that the downspouts and gutters shown in plans and specifications were not eliminated therefrom by agreement; that plaintiff was damaged by failure of defendant Acers to

construct the improvements according to plans and specifications, or to meet F.H.A. requirements; that the difference in the reasonable cash market value of the house and improvements in question (a) as constructed at the time of completion, and (b) if the same had been completed according to plans and specifications was $1,500; that before plaintiff and wife had executed their written instrument of acceptance, defendant Acers represented to plaintiff that said house had been constructed according to plans and specifications, which representation was false but believed in and relied upon by plaintiff at the time; that neither plaintiff nor wife, at any time before execution of the instrument of acceptance, had full knowledge of aforesaid defects in construction, and were induced to sign the acceptance because of defendants' said representation; and that A. E. Acers and J. H. Garrett were partners in the work.

In August, 1938, plaintiff submitted to Acers blue prints or plans for a dwelling on his Amherst lot, under which the latter's bid or contract price was $5,300. Typed specifications were drafted and signed pursuant thereto, the arrangement being subject to a Federal Housing loan then applied for. This agency suggested several changes, reducing the cost, which was agreed to along with a bid by Acers of $4,800; and a construction loan in amount of $4,400 was approved by F.H.A. The improvements were completed in November, plaintiff's letter of acceptance obtained by Acers, and the F.H.A. guaranteed loan of $4,400 was taken up by a third party. The instant suit, setting forth in detail above mentioned specifications, alleging substantial failure to perform same, and defective workmanship in various particulars, was filed in October, 1939, and damages were claimed in amount of $2,500.

An introductory paragraph of what may be termed the "Black-Acers Building Contract," provides: "The following specifications are intended to cover in a general way all materials and labor necessary for the erection and completion of a Brick six room Cottage built to meet requirements of the Federal Housing Administration."; and in subsections touching "excavation," "footing and piers," "cement walks, steps, driveways, etc.," these specifications included such expressions as "to meet" or "to comply with" F.H.A. requirements. Stamped on one set of plans and specifications in evidence were the words, "Property of Federal Housing Adminis-

tration. These documents are to be kept on job at all times, otherwise inspections cannot be made." As construction progressed, F.H.A. inspectors regularly visited the job, duly filing office reports of compliance inspections, all supervised by Arch Baker, chief architect, whose endorsement appears on the certificate finally approving the construction. No claim of fraud or bad faith is made concerning inspections on part of F.H.A. representatives, including this certificate of Mr. Baker, its supervising architect. Appellees' assertion of a complete defense to plaintiff's cause of action is predicated upon above quoted terms of the contract, aided by the undisputed facts just stated, as will be shortly discussed.

On the other hand, if not precluded by contract provisions (the plans and specifications), it is manifest from the record that fact questions were raised on all issues submitted to the jury and by them answered in plaintiff's favor. Relative to a substantial compliance by the contractors with building plans and details, plaintiff's witness, Chas. T. Hansen, experienced in house-moving and reinforcing foundations, testified at length. However, the gist of his narrative was that some month or two before trial (October, 1942), he had been employed by plaintiff to uncover three concrete piers set by Acers under a front corner of said dwelling, in order to determine, if possible, the cause of numerous cracks in outside walls, pulling of brick away from windows, and conspicuous breaking of plaster on inside walls and ceilings; that he excavated to a depth of more than seven feet and found one pier loose in the excavation, falling down of its own weight when exposed, another pier breaking as it was being removed from the hole; that plans called for a one-half inch steel rod through the center and entire depth of each pier, but that such rod extended only halfway; in one instance protruded from side of the pier some eight inches; further, that the plans required a flare at base of each pier to width of 16 inches, whereas, their diameter was 10 inches throughout; the witness here stating:

"Q. Now then, Mr. Hansen, look at those plans, Plaintiff's Exhibit No. 1 and, taking into consideration those plans and the specifications that you have already read, did the piers that you took out from under this house at 3453 Amherst Street meet the requirements of those plans and specifications? A. No, sir.

154

"Q. Will you state to the Court and jury in what manner they failed to meet the requirements of those plans and specifications? A. For two reasons: One was the steel shown here on the plans, shows reinforcing to run to the bottoms of those pilings, and they ran halfway; secondly, it showed it to be flared or under-reamed at the bottom to a width of 16 inches, or a diameter, of which it wasn't when I dug them up."

Over some 100 pages of the statement of facts, this witness testified to his findings and repair work done on above occasion; a corner of the house being lifted three-fourths of an inch to secure uniform level; that he had put in a new pier and concrete footing, and that plaintiff's trouble had been caused by settlement of foundation on all sides. Hansen's estimate of the reasonable cost of repairs to accord with plans and specifications was between $1,545 and $1,595. When the instrument of acceptance was signed, plaintiff testified that he had no knowledge of the alleged defects in construction, though he knew that F.H.A. had finally approved the work.

Above outline of testimony, without more, constitutes sufficient basis for all jury findings, aside from contract provisions, the proper construction of which is concededly the controlling issue for our determination. Aforesaid specifications provide that plaintiff's dwelling shall be built "to meet requirements of the Federal Housing Administration," such phrase being repeatedly used in the writing; and appellees contend that the effect thereof was the mutual designation of F.H.A., through its representatives, to supervise construction of the house, whose judgment that building requirements had been met was final in absence of fraud or bad faith. The rule thus sought to be invoked has application to contracts wherein the parties have bound themselves to abide by decisions of the architect or other person entrusted with authority of superintendence. City of San Antonio v. McKenzie Const. Co., 136 Tex. 315, 150 S.W.2d 989; Kettler Brass Mfg. Co. v. O'Neil, 57 Tex.Civ.App. 568, 122 S.W. 900, writ refused. 'The decision, estimate, or certificate of an architect, engineer, or superintendent, in approving or disapproving the work as a performance of a contract, or in passing on questions relating thereto, is in the absence of fraud, bad faith, or mistake, conclusive and binding on the parties, where the contract, either in express terms provides that it

shall be final and conclusive, or in plain language shows that it was the intention of the parties that the person to whom the question is submitted should be the final arbiter thereof." 9 C.J. § 115, p. 772. "But to make such a certificate or decision conclusive requires plain language in the contract. It is not to be implied." Editorial Note to Annotation, 54 A.L.R. 1255.

Do the terms "Built to meet requirements of the Federal Housing Administration" effectually constitute such agency the final arbiter of all matters touching substantial performance of aforesaid building contract under the above quoted general rule? Though the question posed has not been an easy one, we have reached a negative answer. First, it is to be noted that the specifications nowhere make final and conclusive between the parties all decisions of the Housing officials; but appellees argue such to be the necessary meaning and implication of the word "requirements." Attached to the F.H.A. set of plans and specifications is their loan commitment of $4,400, with the further recital. "This construction work must comply with all Minimum Construction Requirements of the Federal Housing Administration revised June 15, 1938"; and the testimony of R. E. Shepherd, District Director of F.H.A., discloses that compliance with minimum construction requirements related to the loan commitment and did not change the contract between owner and contractor of substantial performance according to its terms. He said:

"Q. * * * Now, what you call the F.H.A. requirements doesn't mean that a contract between a builder and the owner isn't to be carried out according to its terms? A. No, sir, it does not.

"Q. Isn't it a fact, Mr. Shepherd, that F.H.A. requirements only add to the contract, the building contractor and the owner—A. We have what we call minimum construction requirements and all buildings built under our program must at least meet that minimum construction requirement; but we require also that the contractor and owner, if an owner is involved, submit to us the plans and specifications in detail as to what they propose to build. We check those to get our estimate of the cost and see whether or not they are complying with our minimum construction requirements.

"Q. And your requirements don't change that contract that the builder and owner has

made, does it? A. They wouldn't unless there was some item in there that wouldn't meet our minimum requirements with reference to construction or the plan of the house or something of that type."

In this connection, the jury found that downspouts and gutters had been omitted from the specifications without an agreement thereon, Mr. Shepherd testifying that F.H.A. requirements did not include downspouts and guttering; the item being a matter between builder and owner.

■■ It would thus appear that F.H.A. inspection merely extended to appellees' compliance with minimum construction requirements, and whether such was equivalent to "substantial performance" (7 T. J., Sec. 31, p. 578) is not shown. In this state of the record, we cannot say that F.H.A. inspections were final and conclusive as regards appellees' liability to the owner under the contract, i.e., substantial performance thereof according to plans and specifications. In absence of an express proviso of conclusiveness regarding F.H.A. decisions, none should be implied, for right of recourse to the courts may not be contracted away by implication. 17 C.J.S., Contracts, §§ 497, 498, pp. 1015, 1024; 54 A.L.R., supra; Mercantile Trust Co. v. Hensey, 205 U.S. 298, 27 S.Ct. 535, 51 L.Ed. 811, 10 Ann.Cas. 572; Williams v. Mt. Hood Ry. & Power Co., 57 Or. 251, 110 P. 490, 111 P. 17, Ann.Cas.1913A, 177.

The leading cases cited by appellees are upon facts where the general rule of finality was properly applied to clear contract provisions, Kutzschbach v. Williamson County, Tex.Civ.App., 118 S.W.2d 930, being nearest in point; but there, sufficiency of performance by the County of an oral contract (a terracing project) was plainly made a matter for determination by the Federal Government through its planning engineer.

■ Moreover, under the instant record, appellees' failure to meet specifications and plans in the particulars detailed by witness Hansen may well have been responsible for the defects in question. A definition of the word "requirements" most favorable to appellees would not, we think, clothe F.H.A. inspectors with express authority to vary the specifications and bind plaintiff by their acceptance of the result. "There is no doubt but that when parties to such a contract submit such a matter to the decision of the engineer, his determination is final and conclusive, unless, in making it, he has been guilty of fraud, misconduct, or such gross mistake as would imply bad faith or a failure to exercise an honest judgment. Martinsburg & P. R. Co. v. March, 114 U.S. 549 [5 S.Ct. 1035, 29 L.Ed. 255]. *But his decision must be in accordance with the contract.*" (Emphasis ours.) Galveston, H. & S. A. R. Co. v. Henry & Dilley, 65 Tex. 685. See, also, Ryan v. Curlew Irr. & Reservoir Co., 36 Utah 382, 104 P. 218; Williams v. Mt. Hood Ry. & Power Co., supra, and cases there cited.

On the grounds stated, this cause will be reversed and rendered for appellant in amount of $1,500, according to the jury findings of date October 30, 1942.

Reversed and rendered.

### On Rehearing.

The following letter was attached to specifications and made a part thereof; We have given it due consideration in connection with appellees' argument of an existing contract between the parties for FHA to act as architect: "Dear Mr. Black: I agree to erect a building on lot 26 Block "D" Revised First Addition to University Heights, an addition to the City of University Park, same to be built according to plans and specifications herewith submitted F.H.A., furnish all labor and material, for a consideration of Fifty-Three Hundred ($5300.00) Dollars. Jake M. Black, Owner. (Signed) A. E. Acers, Contractor. (Stamped) Federal Housing Administration, Dallas, Texas. Received July 12, 1938."

The specifications further provided for no changes or departure therefrom, adding cost to contractor or owner, except by agreement in writing.

Appellant complains of our reference to the instrument of acceptance signed by the Blacks as "obtained by Acers." More correctly, the letter was required by the Title Company in the final transactions involving possession and consummation of loan; Acers, as plaintiff, testified, having theretofore represented the building to be in accordance with specifications; the letter also antedating discovery of defects, as reflected in jury issues under plaintiff's allegations and proof. The motion for rehearing will be overruled.

Overruled.