

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

September 18, 1989

Honorable Elizabeth C. Jandt            Opinion No. JM-1095
Guadalupe County Attorney
105-A North Austin                      Re:  Validity of contract for
Seguin, Texas  78155                    library services  (RQ-1647)

Dear Ms. Jandt:

You have asked several questions about a 1964 contract for library services executed by both the City of Seguin (the city) and Guadalupe County (the county) as parties, as well as by the Board of Trustees of the Seguin and Guadalupe County Library (the board).

The contract, you advise, recites that the county theretofore established the board to supervise the erection of a library building and to manage the library to be housed there. By the terms of the agreement, the board agreed to render free library service for all Guadalupe County under the authority of article 1694, V.T.C.S. The provisions of that statute are now embodied in section 323.011 of the Local Government Code, a nonsubstantive revision of the former law. See Acts 1987, 70th Leg., ch. 149, at 1129.

For its part, the city agreed, among other things, to the erection of the building on city-controlled and city-maintained property, and promised to relinquish to the board, as necessary, control of the grounds (which the city would continue to maintain nevertheless). According to the agreement, you explain, the board was to be appointed by the commissioners court of the county "with the consent and approval" of the city council. The board was to regularly furnish the city and county with financial statements and submit budgets for their approval. The city and county expressed an intention to undertake certain financial obligations to support the board's operations.

In 1975, we understand, certain "by-laws" proposed by the board were adopted by both the city and the county as "amendments to the contract," altering, among other things, the manner in which board members were selected. In 1988, however, the commissioners court of the county voted to

rescind the "by-law" amendments. The city has not joined the county in that action, nor has the board agreed to it.

You ask, first, about the validity of the 1964 agreement; second, about the validity of the 1975 "by-law" amendments to the agreement; third, about the effect upon the arrangement of the 1971 enactment of the Interlocal Cooperation Act; and, finally, about the effect of the 1988 rescission vote by the county commissioners.[1] We need not address your first question about the original validity of the 1964 agreement because we have concluded that the 1975 adoption of the "by-law" amendments to the agreement amounted to ratification of an arrangement sanctioned by the Interlocal Cooperation Act in 1975, whether or not the arrangment was sanctioned by law prior to the enactment of that statute.

The City of Seguin has been a home-rule city since 1971. Home-rule cities have general authority to include in their charters any power so long as it is not inconsistent with the constitution or general laws enacted by the legislature. Tex. Const. art. XI, § 5; Local Gov't Code ch. 9; Forwood v. City of Taylor, 214 S.W.2d 282 (Tex. 1948). The powers of counties are not so far-reaching and are often said to depend on authorization by the constitution or the legislature. See 35 D. Brooks, County and Special District Law § 5.11 at 151 (Texas Practice 1989).

In 1968 the Texas Constitution was amended to add article III, section 64(b), reading:

> (b) The county government, or any political subdivision(s) comprising or located therein, may contract one with another for

---

1.  Our response to your request is based upon the above-cited allegations of fact reported to us. It should not be construed as a confirmation of their accuracy. The attorney general does not determine fact disputes in the opinion process. Our conclusions are not based on an independent examination of the contract and other instruments supplied with your request. We have made no independent legal analysis of their effect but have, instead, for purposes of this opinion, accepted your representation of the facts surrounding them and their intended legal consequences.

> the performance of governmental functions required or authorized by this Constitution or the Laws of this State, under such terms and conditions as the Legislature may prescribe. No person acting under a contract made pursuant to this Subsection (b) shall be deemed to hold more than one office of honor, trust or profit or more than one civil office of emolument. The term "governmental functions," as it relates to counties, includes all duties, activities and operations of statewide importance in which the county acts for the State, as well as of local importance, whether required or authorized by this Constitution or the Laws of this State.[2]

And in 1971, the legislature enacted the Interlocal Cooperation Act, specifying that

> Any local government may contract or agree with one or more local governments to perform governmental functions and services under terms of this Act.

V.T.C.S. art. 4413(32c), § 4(a). Library services were expressly included in the definition of "governmental functions and services." Id. § 3(2).

Thus, at the time the 1975 "by-law" amendments to the contract were adopted, both the city and the county possessed full authority to contract with each other for the establishment and operation of a public library, whether or not they possessed it before that time. The provisions of the Interlocal Cooperation Act were made "cumulative of all other laws or parts of laws, general or special." Id. § 7.

---

2. Some confusion exists as to whether subsection (b) originally applied to all counties or only to those counties (Tarrant, El Paso) to which subsection (a) applied, but the matter was mooted in 1970 when subsection (a) was amended to apply to all counties. See 1 Braden, The Constitution of the State of Texas: An Annotated and Comparative Analysis, at 294 (1977).

If we assume that the contract between the city and the county was unenforceable and void at the time it was made in 1964 because one or the other (or both) of them was acting ultra vires, still, counties and cities may ratify a contract which they might lawfully make at the time of such ratification although they had no such power when the contract was executed. See 56 Am. Jur. 2d Municipal Corporations, Counties, and Other Political Subdivisions § 509 at 560 (1971); 14 Tex. Jur. 3d Contracts § 144 at 243.

In Kutzschbach v. Williamson County, 118 S.W.2d 930 (Tex. Civ. App. - Austin 1938, writ dism'd), the commissioners court, without a written contract or a written request from the owner of the land, entered an order that certain terracing work be done although a statute permitted such county work only "after request in writing by the owner of the land." (There was, instead, merely an oral agreement struck by the land owner and one of the commissioners.) Thus, the contract was ultra vires, but when the land owner refused to pay for the work, the commissioners court instituted suit, which, according to the appellate court, amounted to a ratification of the contract, rendering it valid. See also Williams v. Pure Oil Co., 78 S.W.2d 929 (Tex. 1935); Mobile Electric Co. v. City of Mobile, 79 So. 39 (Ala. 1918).

In our opinion, by adopting the "by-law" amendments to the 1964 agreement in 1975, after the passage of the Interlocal Cooperation Act permitted such contracts to be legally made, the county and the city confirmed and ratified their arrangement, as modified by the "by-law" amendments, curing any ultra vires defect that might have caused the original agreement to be unenforceable.

We do not pass upon the particulars of the 1975 "by-laws" amendments. We merely advise that it was within the power of the city and county in 1975 to revise their pre-existing agreement and, by doing so, to ratify and validate the arrangement between them.

On the basis of the information furnished us, it appears that the attempted unilateral rescission of the agreement by the county commissioners court in 1988 was ineffective. Assuming that the original 1964 contract was invalid as ultra vires, it was originally subject to disaffirmance at the election of the county. But after the county elected in 1975 to affirm and ratify the agreement by adopting the "by-law" amendments thereto, the arrangement was thereafter the subject of a binding contract that could

not be cancelled arbitrarily by the commissioners court alone. See 14 Tex. Jur. 3d Contracts §§ 322-328 at 546; 10 Tex. Jur. 3d Cancellation and Reformation of Instruments § 53 at 557.

### S U M M A R Y

It was within the power of the City of Seguin and the County of Guadalupe in 1975 to revise and ratify a pre-existing 1964 agreement between them regarding library services. Even if the original 1964 agreement between them was originally invalid as ultra vires, ratification in 1975 was effective because the Interlocal Cooperation Act authorizing such agreements had become law. After such ratification, the agreement was not subject to unilateral rescission and cancellation by the county.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General